JAMES H. BEAL & al. *versus* THOMAS CUNNINGHAM.

A verdict will not be set aside as being against evidence, unless the evidence so strongly preponderates in favor of the party against whom the verdict was rendered as to justify the conclusion that the jury were influenced by improper considerations.

Nor will a verdict be set aside because the jury, having, by consent of parties, sealed up their verdict and separated for the night, were allowed, after the same was read by the clerk on the following morning, to amend it so as to conform to the real finding; although, by so doing, the verdict became one *against* instead of *in favor* of the plaintiff.

ON REPORT from *Nisi Prius.*

This was an action of TRESPASS for taking what were alleged to be plaintiffs' goods.

The defendant was sheriff, and justified under an attachment against one Barker.

A verdict was returned for defendant, and the plaintiffs moved to set the same aside, as being against the evidence in the case, the weight of evidence, and the law. Another cause assigned was, (and the facts were certified to be correct,) that the said cause was committed to the jury, and that, by consent of parties, they were informed that they might, when agreed, seal up their verdict and separate and return it to Court the next morning. They did separate, and the next morning, on being called upon, a sealed verdict was handed by the foreman to the clerk who read the same; it being a verdict for the

plaintiffs without any assessment of damages. On being informed that their verdict was informal, they, by their foreman, asked to retire, but were informed by the Court that it was not authorized to allow them to consider the case over anew after they had separated; that if the defect in the verdict was matter of form only, it might be amended by the foreman without leaving their seats. The foreman then stated that it was matter of form only, and he, by leave of Court, inserted the word "not" before the word "guilty," when the verdict, thus amended, was read to the jury and affirmed.

*Tallman*, for plaintiffs.

*Hubbard*, for defendant.

RICE, J.—The plaintiffs are merchants doing business in Boston. The goods in controversy had been delivered by them to one Ezekiel W. Barker of Newcastle, and were taken on an execution against said Barker, by a deputy of the defendant, who was sheriff of the county of Lincoln. To prove property in themselves, in the goods, the plaintiffs introduced Henry C. Leach, one of their clerks, who testified, among other things, that he was in the counting room, at the desk, when the agreement was made for the goods sued for; thinks in June, 1852, but not certain. Barker wanted the goods sent. Plaintiffs told him they would send them to him, but the goods should remain the plaintiffs' property, as before they were sent, until used or disposed of by him. Barker said nothing—don't recollect as Barker said any thing. He further testified that he did not pretend that he heard all the conversation in the counting room, or recollect all that was there said.

Plaintiffs also called Ezekiel W. Barker, who testified that he had bills of the goods, but not at Court; that plaintiffs always sent bills; he was to pay all debts, and was to pay plaintiffs as fast as the goods were sold.

There was other testimony showing that Barker had, before these goods came into his hands, purchased other goods of plaintiffs, and paid for them. There was also much testi-

mony showing the manner in which Barker had treated the goods after they came into his possession, and the declarations he had made with reference to them, while in his possession. These acts and declarations were inconsistent with any admission, by Barker, of title in the plaintiffs. The books of the plaintiffs were not introduced, nor were any bills introduced showing how the goods were charged when delivered to Barker. The dominion which Barker exercised over the goods, as far as appeared from the evidence, while they were in his possession, was absolute.

There was evidence on both sides; and we do not think it so clearly and strongly preponderates in favor of the plaintiffs as to lead to the conclusion that the jury were influenced by improper considerations, but on the contrary that their verdict was authorized by legitimate inferences deduced from the facts in the case.

The jury returned a sealed verdict in the morning, having retired to consider the case the evening previous. On suggestion from the foreman, that there was an error in the verdict, as read by the clerk, he was permitted by the Court to amend the same, by inserting therein the word *not* before the word *guilty*, after which amendment by the foreman, the verdict was affirmed and recorded. The permission given to the jury, thus to amend their verdict, is assigned as one of the causes for setting aside the same, and granting a new trial. There is no suggestion that the verdict, as amended, is not in conformity with the finding of the jury, or that the amendment was induced by any improper influence, or wrong practice from any source. It was, then, merely a correction of a verbal error, thereby reducing the verdict to form, and making it indicate truly the result to which the jury had, on deliberation, arrived. No impropriety in the course adopted is perceived. *Motion overruled, and judgment on the verdict.*

TENNEY, C. J., and APPLETON, J., concurred.