THE STATE EX REL. THE CITY OF MILWAUKEE, Plaintiff in error, vs. NEWMAN, Defendant in error.

*April 9 — May 21, 1897.*

*Gambling: Municipal ordinances: Penalty for offense punishable also under statute: Constitutional law: Searches and seizures: Return of search warrant: Detention of person arrested: "Due process of law."*

1. An action by a city to recover a penalty for the violation of a municipal ordinance prohibiting an act which is a crime or misdemeanor and punishable at common law or by statute, and prescribing a penalty for its violation by fine with imprisonment on default of payment, is *quasi-*criminal.

2. Although an act is a penal offense under the laws of the state, further penalties for its commission may, under proper legislative authority, be imposed by municipal by-laws or ordinances; and the enforcement of the one does not preclude the enforcement of the other.

3. A municipal ordinance providing that if any person shall make oath before the police court that "he suspects and believes, or has good reason to suspect and believe, that any house or other building, room or place is used as and for a gaming house, room or place, for the purpose of gambling . . . and that persons re-

The State ex rel. The City of Milwaukee vs. Newman.

sort thereto for that purpose," the court, "whether the names of the persons last mentioned are known to the complainant or not," shall issue a warrant commanding the officer executing it "to enter such house, building, room or place, and to arrest the keeper thereof and all persons found gambling," and "all persons there found whether playing, gaming, or otherwise," and to take possession of all gambling implements and devices, etc.— is *held*, in respect to the keeper of such a house, not to be in violation of sec. 11, art. I, Const., forbidding unreasonable searches and seizures and providing that no warrant shall issue but upon probable cause and particularly describing the place to be searched and the persons or things to be seized.

4. A provision in such ordinance that it shall be sufficient to sustain a conviction of a person charged with being the keeper of a gambling house to show that when arrested he was in charge of the building and that gambling implements were at that time found therein, is an independent one and, if void, does not invalidate the other portions of the ordinance.

5. The return of a search warrant which is the basis of the prosecution under a municipal ordinance of a person arrested under the warrant as the keeper of a gambling house, must state with clearness and certainty the facts authorizing the arrest under the ordinance.

6. A person arrested while violating a city ordinance against gambling, under a search warrant not naming him and issued upon an affidavit making no direct charge against him, cannot, after being brought before the court, be detained on such warrant alone, pending an adjournment of the case for trial; but a complaint in due form should be lodged against him and process thereon issued for his detention.

ERROR to review a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This is a writ of error to the circuit court for Milwaukee county, bringing up for review the proceedings had in that court upon a writ of *certiorari* issued to Hugh Ryan, Esq., a court commissioner for Milwaukee county, in the matter of a writ of *habeas corpus* issued by said court commissioner on the petition of the defendant in error, claiming to be illegally imprisoned and restrained of his liberty by the sheriff of Milwaukee county.

The State ex rel. The City of Milwaukee vs. Newman.

The petition of the defendant in error to the court commissioner, Ryan, is in the usual form, and stated that about the 9th of November, 1895, one James Markey filed in the police court of the city of *Milwaukee,* Milwaukee county, Wisconsin, a sworn complaint "that he has good reason to suspect and believe, and does suspect and believe, that certain rooms on the second floor of the building known as No. 208 West Water street, in the said city and county of Milwaukee, are used as and for a gaming house, gaming rooms, and a gaming place, for the purpose of gambling for money and other property, and that persons resort thereto for that purpose, contrary to the provisions of an ordinance entitled ' An ordinance for the suppression of gambling and gambling houses,' passed by the common council of said city August 11, 1890," wherefore he prayed that a warrant might be issued out of said police court, pursuant to said ordinance; whereupon a warrant was issued out of said court to the sheriff of said county, his deputy, policemen, or any constable of said county, commanding them, in the name of the state of Wisconsin, "to enter said house, building, rooms, and place, and to arrest all persons who should be found playing for money and other things of value, and all persons who should be found, whether playing, gaming, or otherwise, and also the keeper thereof, and take into your custody and possession all of the implements of gaming, tables, wheels, and other constructions, cards, dice, chips, devices, schemes, contrivances, and things adapted, suitable, devised, and designed, and which can or shall be used, for gambling purposes, which may there be found, and all of the same, and forthwith bring before the police court of the city of *Milwaukee* all of the said persons there found, and all said implements, tables, wheels, and other constructions, cards, dice, chips, devices, schemes, contrivances, and things, to answer to said city of *Milwaukee* as in and by said ordinance provided."

The State ex rel. The City of Milwaukee vs. Newman.

The sheriff returned to the writ of *habeas corpus* that the within-named *George Newman* was in his custody " by virtue of said warrant issued out of the police court of the city of *Milwaukee*, in which said *George Newman* is charged with being the keeper of a gambling house, contrary to the provisions of the ordinance of the city of *Milwaukee* referred to in said warrant, a copy of which said warrant is hereto annexed, and the original of which is in my possession, and, as commanded herein, I herewith produce *George Newman* before the court." Indorsed upon the said warrant was the following: " I, the undersigned, a police officer of the city and county of Milwaukee, state of Wisconsin, hereby certify that, by virtue of the within and annexed warrant, I arrested *George Newman*, as the keeper of the gambling house referred to in the within-annexed warrant; that I arrested Harry Nickerson, Jacob Yablowski, Anton Prebel, Gust Werner, James Polk, and Sam Goran, as inmates of the within-described gambling house; and that I then and there seized, and have in my possession, the within and following described property, by me taken from said gambling house, room, and place, and have the bodies of said persons so by me arrested as aforesaid, and have the implements and property so by me seized as aforesaid, now in custody before the court, and which said property and implements so by me seized as aforesaid are more particularly described in the schedule attached to this, my return to said warrant, and which said schedule is made a part hereof, and is by me signed. Dated, Milwaukee, November 11, 1895. Albert Genthe, Police Officer." " The schedule of property and implements by me seized, and referred to in the annexed return, of which this is a part: 1 poker table, 18 packages of playing cards, 1,184 chips. Albert Genthe, Police Officer."

The petitioner, *George Newman*, demurred to the said return, and said commissioner sustained said demurrer and discharged the petitioner, holding that the ordinance under

The State ex rel. The City of Milwaukee vs. Newman.

which he was held was unconstitutional and void. Upon the application of the city attorney of the city of *Milwaukee*, a writ of *certiorari* was issued out of the circuit court to review the proceedings in said matter, to which the said court commissioner made return of the proceedings before him in said matter, whereupon, after argument, it was adjudged that said discharge granted by the commissioner be affirmed.

By the city charter (Laws of 1874, ch. 184, subch. IV, sec. 3) the common council was empowered " to make, enact, ordain, establish, publish and enforce all such ordinances . . . for the government and good order of the city, . . . for the suppression of vice, for the prevention of crime," as they should deem expedient, and to declare and impose penalties, and to enforce the same against persons violating the same, and such ordinances were declared to be and have the force of law, if not repugnant to the constitution of the United States or of this state; and by subd. 4, " to restrain or prohibit all descriptions of gaming and fraudulent devices and practices, and all play of cards, dice and other games of chance, for the purposes of gaming in said city;" by subd. 5, " to authorize the destruction of all instruments and devices used for the purposes of gaming;" and by subd. 60, " to authorize the arrest, fine and imprisonment of keepers, exhibitors or visitors at any gambling table, gambling house," etc.

The ordinance (sec. 1) provides, in substance, that if any person shall make oath before the police court, or the clerk thereof, that "he suspects and believes, or has good reason to suspect and believe, that any house or other building, room or place, is used as and for a gaming house, room or place, for the purpose of gambling for money or other property, and that persons resort thereto for that purpose," the court or clerk thereof, "whether the names of the persons last mentioned are known to the complainant or not, shall issue a warrant commanding the sheriff of the county, etc.,

or any police officer of said city, to enter such house, build-
ing, room, or place, and to arrest all persons who shall be
found playing for money or other thing of value, and all
persons who shall there be found, whether playing, gaming,
or otherwise, and also the keeper thereof, and take into their
custody and possession all of the implements of gaming,
tables, wheels, or other constructions, cards, dice, chips, de-
vices, schemes, contrivances, and things adapted, suitable,
devised, or designed, or which can or shall be used, for
gambling purposes, which may there be found, and all of
the same, and shall retain and hold the same until the same
shall be disposed of" as provided in the ordinance.    The
second section provides that "the officer making such arrest
shall keep the persons and keeper, so arrested, in his custody
until the next regular session of the court thereafter [a ses-
sion being held every morning, Sundays and legal holidays
excepted], when he shall make return of his doings there-
under to said court, and also take the persons or keepers, so
arrested, before said court for trial, unless they be sooner
discharged, or released, by due course of law;" and by sec. 9
the officer was required to make return of the warrant to the
court, and of his doings thereon, and, if any person is arrested
by virtue thereof, "the names of such persons shall be stated
in such return, and also a statement whether he was so arrested
as keeper or inmate of a gambling house," and if any gambling
devices, etc., such as are mentioned in sec. 1, shall have been
seized, he shall attach to his return a list or schedule thereof.

By the third section it was provided that, upon bringing
such parties before the court, a complaint should be made
against such keeper, in which he should be charged with
keeping a gaming house, building, room, or place, and also
against the persons so arrested, in which they should be
charged with being inmates of a gambling house, etc., etc.
The complaints "shall be made in the action or proceeding
in which the warrant mentioned was issued, and shall be

considered a part of such action or proceeding." They are to be made "by the city attorney, or his assistant, in the manner provided by, and in accordance with the provisions of, the charter of said city, and the rules and practice of the court, and need not be verified." By the fourth section, a trial is to be had upon such complaint as "in other cases, actions and proceedings brought to punish for violations of the ordinances of said city under the charter," and adjournments may be had. The defendant or defendants in the meantime "shall be detained in the custody of the officer, or admitted to bail, as in other actions for violations of the ordinances of the city." By the fifth section it is provided in substance that it shall be sufficient to sustain a conviction upon any complaint against any person charged with being the keeper of a gambling house "to show that the person so charged, at the time of his arrest, was in charge of the house or building in which he was arrested, and that at the time of his arrest there was found in such house, or building, room or place, so in his charge, or under his control, the gambling instruments, contrivances or devices" mentioned in sec. 1; and as against one charged with being an inmate of a gambling house, etc., to show "that the person so charged, at the time of his arrest, was present in the house, building," etc., "described in the warrant, and that there were found in the place where he was arrested, and in his presence, the gambling implements, contrivances or devices mentioned in said section one." By section 7, one convicted of being a keeper of a gambling house is to be punished by a fine of not less than $100 nor more than $500, and the costs of the prosecution, and, if not paid, to be imprisoned in the common jail or house of correction until paid, but not longer than ninety days. By section 8, one convicted of being an inmate of such a house is to be punished in like manner, the fine to be not less than $10 nor more than $25, and the imprisonment not to exceed thirty days. By section 10, after conviction

of the keeper the court is to proceed, upon the return to said warrant and any answer the keeper may make thereto, to hear, try, and determine whether the devices, etc., seized, or any part of them, " are devices, schemes," etc., etc., "adapted, suitable, devised or designed for gambling purposes, and whether they were taken from the gambling house, room," etc., "in 'which such keeper was found," and, if these matters are found in the affirmative, the court is to order the same to be destroyed.

For the plaintiff in error there was a brief by *C. H. Hamilton*, city attorney, and *Howard Van Wyck*, assistant city attorney, and oral argument by *D. S. Rose*.

For the defendant in error there was a brief by *Ernest A. Kehr*, and oral argument by *Mr. Kehr* and *Mr. W. C. Williams*.

PINNEY, J.   1. The ordinance brought in question by this proceeding was framed for the discovery and suppression of gambling and gambling houses in the city of *Milwaukee*. It subjects the keeper of the gambling house, room, or place, and all persons who shall be there found, whether playing, gaming, or otherwise, to the penalties prescribed. The keeping of a common gambling house, as well as betting, wagering money or any thing of value, upon any game of cards, dice, or other device, are misdemeanors by the general statute. R. S. secs. 4529, 4530. And by secs. 4539 and 4840 search warrants for the detection and discovery of gambling and gaming devices, etc., are authorized to be issued, substantially under similar circumstances as provided by the ordinance. The proceeding against the petitioner, *Newman*, for keeping a gaming house was *quasi*-criminal, although prosecuted in the name of the city. *Boscobel v. Bugbee*, 41 Wis. 59; *Platteville v. Bell*, 43 Wis. 488. In *Platteville v. McKernan*, 54 Wis. 487, it was held that where a city or village ordinance prohibits that which is a

crime or misdemeanor and punishable at common law or by statute, and prescribes a penalty for its violation by fine, with imprisonment on default of payment, as in the present case, the action to recover such penalty is *quasi*-criminal. *Oshkosh v. Schwartz*, 55 Wis. 487; *State ex rel. Hamilton v. Municipal Court of Milwaukee*, 89 Wis. 361. Although the action is *quasi*-criminal, the right of action for the penalty is in the city, and the common council had a right, under the provisions of the charter, to enact a proper and suitable ordinance to restrain and prohibit gaming, and, as incident thereto, to provide for the issue of search warrants as a means of detection and suppression of violations of the ordinance. It seems to be the clear weight of authority that an act may be a penal offense under the laws of the state, and that further penalties, under proper legislative authority, may be imposed for its commission by municipal by-laws or ordinances, and the enforcement of the one would not preclude the enforcement of the other. Cooley, Const. Lim. 239, and cases cited. In *Mayor v. Allaire*, 14 Ala. 400, where a city ordinance imposed a fine for assault and battery committed within the city limits, and its validity was questioned, the court said: "The object of the power conferred by the charter, and the purpose of the ordinance itself, was not to punish for an offense against the criminal justice of the country, but to provide a mere police regulation for the enforcement of good order and quiet within the limits of the corporation. So far as an offense has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment. . . . The offense against the corporation and against the state are distinguishable and wholly disconnected, and the prosecution, at the suit of each, proceeds upon a different hypothesis. The one contemplates the observance of the peace and good order of the city. The other has a more enlarged object in view,— the maintenance

The State ex rel. The City of Milwaukee vs. Newman.

of the peace and dignity of the state." The great weight of authority is clearly in support of this view (1 Beach, Pub. Corp. § 510, and cases cited); though the author expresses the view that the cases opposed, while fewer in number, are sounder in principle. The ordinance in question is a police regulation for the city, passed under competent legislative authority, the better to subserve good morals and civil order in a large city, where the necessity of stringent police regulations is greater than in rural or less densely settled communities.

2. It is objected that the ordinance violates the provision of the constitution (art. I, sec. 11) which declares that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article IV of the constitution of the United States contains substantially the same provision. "The things here forbidden are two — search and seizure. And not all searches nor all seizures are forbidden, but only those that are unreasonable. Reasonable searches, therefore, may be allowed; and if the thing sought be found, it may be seized." Per MILLER, J., in *Boyd v. U. S.* 116 U. S. 641. The object of the constitutional provision was to abolish searches by general warrants, which authorized searches in any place or for any thing. Searches founded on affidavits which describe the thing to be searched for, the person and place to be searched, are not unreasonable, and are still permitted. In the same case, Mr. Justice BRADLEY said that "laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within the category of unreasonable

searches and seizures. *Comm. v. Dana*, 2 Met. 329. Many other things of this character might be enumerated." 116 U. S. 623, 624. The subject of what are reasonable searches and seizures was elaborately considered in *Glennon v. Britton*, 155 Ill. 233, in which it was held that a search warrant might be issued for the search and seizure of property deemed by law pernicious or dangerous to the public welfare, and the wrongful use of which is surreptitious, or so concealed that discovery cannot be had by ordinary process or diligence, where the officers are apprised that the law has been violated, and that searches and seizures of gambling implements are not within the inhibition of federal or state constitutions, which guarantee the citizen immunity against unreasonable searches and seizures. In this case PHILLIPS, J., said: "Experience has shown that while the property, materials, and paraphernalia may be seized, and the immoral resort or rendezvous thus, perhaps, broken up, the proprietors, or those who engage in the immoral or nefarious business, are on the alert, and not unfrequently evade, if they do not altogether escape, the just penalties of the law. The object of the proceedings to be instituted under the statute is that the unlawful and immoral practice be stopped, by destroying implements, apparatus, material, etc., with which it is carried on. The theory is, in respect to such property, that no one is longer the owner of it."

Under the warrant issued pursuant to the ordinance under consideration, the particular house, building, room, or place to be searched is specified; and the persons implicated are described, in general, as persons who resort thereto for gambling, contrary to the provisions of the ordinance, and who are found present when play is in progress, whether engaged in play or not. The officer is "to arrest all persons found playing for money, or other thing of value, and all persons who shall there be found, whether playing, gaming or otherwise, and also the keeper thereof." For the arrest

and detention of persons caught in actual violation of the ordinance, no warrant was necessary. *Hawkins v. Lutton*, 95 Wis. 492. The validity of statutes or ordinances such as the present, authorizing searches for and seizures of gambling implements, and the arrest of persons engaged in using, or present when used, is universally sustained as a proper and justifiable police measure for the detention, suppression, and punishment of gambling. *People v. Hanrahan*, 75 Mich. 611; *Hastings v. Haug*, 85 Mich. 87; *Comm. v. Dana*, 2 Met. 329. This ordinance is similar in most of its provisions to the statute in Massachusetts in regard to entering common gaming houses, arresting parties engaged in violation of the law, and seizing gaming implements. Pub. St. Mass. ch. 99, sec. 10, and sec. 2, ch. 449, Laws of 1887, amendatory thereof. The case of *Comm. v. Warren*, 161 Mass. 281, as to the circumstances under which persons will be regarded as present at any game played for money, whether engaged in playing or not, if the implements of gaming are found in the place searched, as well as *Comm. v. Adams*, 160 Mass. 310, have material bearing upon the questions under consideration.

3. It was contended that the provision of the ordinance authorizing the arrest, by the officer executing the search warrant, in addition to those found playing for money, etc., of "all persons who shall there be found, whether playing, gaming or otherwise," was void. While this question is not strictly material to the case before us, in respect to the keeper of the house, we think it proper to call attention to the fact that similar provisions in the Massachusetts statutes have been upheld in *Comm. v. Smith*, 166 Mass. 370, where it was said: "It is unnecessary, under the statute, to allege the defendant's knowledge of the presence of the implements or the character of the place. The statute means that people enter such places at their peril. . . . When, according to common experience, a certain fact generally is accompanied by knowledge of the further elements necessary to

complete what it is the object of the law to prevent, or even short of that, when it is very desirable that people should find out whether the further elements are there, actual knowledge being a matter difficult to prove, the law may stop at the preliminary fact, and, in the pursuit of its policy, may make the preliminary fact enough to constitute a crime. It may say that, as people generally do know when they are selling intoxicating liquors, they must discover at their peril whether what they sell will intoxicate. It may say that, if a man will have connection with a woman to whom he is not married, he must take the chance of her turning out to be married to some one else. *Comm. v. Elwell,* 2 Met. 190; *Comm. v. Murphy,* 165 Mass. 66. In like manner it may say that people are not likely to resort to a common gaming house without knowing it, and that they must take the risk of knowing the character of the place to which they resort, if the implements of gaming are actually present." See Laws of Mass. 1895, ch. 419, secs. 2–4.

4. It would not, we think, be a defect fatal to the ordinance, if it should be held that the common council had no authority to enact the rule of evidence contained in sec. 5. This provision is an independent one, and, if held invalid, the offense could well be prosecuted, and a conviction be had, under the common-law rules of evidence. This question relates only to the trial, and we give no further opinion in respect to it.

5. The ordinance, as a police measure, provides for a single proceeding, commencing with the issuing of the search warrant, and upon the proper execution of which the keeper and inmates found in the gambling house, building, room, or place may be arrested, and, upon sufficient return made, complaints may be filed against them, which "shall be considered a part of the action or proceeding," and adjournments of which may be had, and upon which a trial and conviction may take place; the defendants in the meantime

to "be detained in custody of the officer, or admitted to bail, as in other actions for violation of the ordinances of the city." After the conviction of the person arrested as the keeper of the gambling house, "the court in which the said conviction is had shall immediately proceed, *upon the return of the officer* making the arrest, and such schedule [as may be to said return attached], and *any answer* said keeper may make thereto, to hear, try and determine whether or not the devices," etc., "seized by the officer and described in his return," or any part of them, are devices, schemes, etc., "adapted, suitable, devised or designed for gambling purposes," and whether they, or any part thereof, were taken from the gambling house, etc., where the keeper was found; and, if these matters be found in the affirmative, the court is to make an order for their destruction, and they are to be destroyed accordingly.

6. The return of the officer upon the warrant is vague and indefinite. It does not appear from it that *Newman*, the petitioner, arrested as the keeper of the gaming house searched, or those arrested as inmates, were either of them found or arrested in the building, room, or place authorized by the warrant to be searched. In a proceeding of such a drastic and summary character nothing should be left to inference, but all material facts should be stated in the return with clearness and certainty, so as to justify and support the subsequent proceedings required to be taken upon the return of the warrant. This leads us to the consideration of the question whether, when the writ of *habeas corpus* was sued out, the petitioner was held in custody by "due process of law." His name is not mentioned in the search warrant, or in the affidavit upon which it issued. In brief, he is not charged, so far as the sheriff's return to the writ of *habeas corpus* shows, with any offense, or held by any process directed against him personally. From his petition it appears that he was arrested under the search warrant, and brought before the police court, November 9, 1895, for

The State ex rel. The City of Milwaukee vs. Newman.

trial, but for what offense it is not stated; that the trial was continued until the 27th of the same month, and for want of bail he was held in custody, imprisoned, etc., by Sheriff Stanley, under and by virtue of said proceedings, and not otherwise.    There is nothing in the return or record to show that any complaint had been filed against him or was pending in the police court.    The fact that he was arrested while violating the ordinance would justify his detention for the usual and reasonable time to take him before the court or magistrate when and where a complaint in due form might be lodged against him, but it would be an un-heard-of and wholly unjustifiable course of proceeding to hand an accused party over to the sheriff or other officer without warrant or commitment founded upon informa-tion or complaint against him upon which process might issue.    It was necessary, when the case was adjourned for trial, that appropriate process, properly warranted and sup-ported, for his detention, should have been, but none ap-pears to have been, issued.    The only appearance of au-thority the sheriff had was the original warrant, in which the petitioner was not named, issued upon an affidavit making no direct charge against him, and the fact that he was arrested by the officer while, perhaps, in the com-mission of the offense specified in the ordinance.    The de-tention and restraint of which the petitioner complains were not, for these reasons, we think, by "due process of law." Const. Wis. art. I, sec. 8, as amended; Amendm. Const. U. S. art. XIV, sec. 1.   An indictment or information duly found, or complaint filed, and a proper order or warrant thereon, were indispensable to his lawful detention.    Under the general law, an information can be filed only in cases where there has been a hearing on a preliminary examina-tion, or where it has been waived by the accused.    We do not think that it was in the power of the common council to justify the arrest and detention of persons for violations of city ordinances, without "due process of law," founded

upon information or sufficient complaint. "Due process of law," as applied to arrest and detention of persons and judicial proceedings in general, means "law in its regular course of administration, according to the prescribed forms, and in accordance with the general rules for the protection of individual rights." *Rowan v. State*, 30 Wis. 149. It is process founded on, and according to the course of, proceedings applicable to the subject matter, and conformable to those general rules which affect all persons alike, observing and conforming to the general rules respecting the liberty and safety of the person, "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." *Bank of Columbia v. Okely*, 4 Wheat. 244; *Westervelt v. Gregg*, 12 N. Y. 209-212. Due process of law is required and intended to protect the life, liberty, and property of the citizen against acts of mere arbitrary power in any department of the government, and it means law in its regular course of administration through the courts of justice. Cooley, Const. Lim. 431 *et seq*. Whether a complaint signed by the city attorney without previous public examination of the accused, and not otherwise verified than by his official signature, is due process of law in this respect, is a point not here involved, and upon which we express no opinion. Inasmuch as it is not made to appear that the petitioner was duly charged, by a sufficient complaint, with having violated the ordinance, we think that there was no authority for the detention or imprisonment of which he complains.

Upon the grounds and for the reasons stated, we must hold that the judgment of the circuit court affirming the order of the court commissioner discharging the petitioner was correct and must be affirmed.

*By the Court.*— Judgment is ordered accordingly.