Koch, Plaintiff in error, vs. The State, Defendant in error.

*November 20, 1905—January 9, 1906.*

*Criminal law and practice: Witnesses: Cross-examination: Conviction affecting credibility: "Criminal offense:" Verdict: Amendment after separation of jury: Instructions to jury: Exceptions.*

1. On cross-examination of a witness in a criminal case it was proper to ask if he had ever been arrested and convicted of being drunk and disorderly, no objection being made that the question was not sufficiently specific to cover the criminal offense described in sec. 1561, Stats. 1898.   The fact that both arrest and conviction were embraced in one question was not prejudicial or material.

2. Such question not being confined to an offense committed in any particular locality must be deemed to have had reference to a locality where there was no municipal ordinance or regulation for the punishment of drunkenness.

3. The term "criminal offense" in sec. 4073, Stats. 1898 (providing that conviction of a criminal offense may be proved to affect the credibility of a witness), includes a misdemeanor, but does not include a mere violation of a municipal ordinance.

4. Upon a prosecution for robbery and larceny from the person, a sealed verdict finding defendant guilty of larceny, but not finding that he was guilty of larceny from the person nor the value of the property taken, is not sufficient to support a conviction.

5. Where in a criminal case the jury has separated after agreeing upon and sealing up a verdict, such verdict cannot, when

opened in court, be orally altered or amended in matter of substance.

6. Exceptions to the instructions to the jury, not incorporated into the bill of exceptions so as to become a part of the record, cannot be considered on appeal.

7. Where a motion for a new trial set out as a ground therefor a considerable part of the charge to the jury, embracing several distinct propositions, some of which were correct, a general exception to the order denying the motion is not available on the question of error in the charge.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Reversed.*

Plaintiff in error was tried jointly with one Meyers upon an information for robbery and larceny from the person under sec. 4378, Stats. 1898. At the close of the testimony on the evening of November 18, 1904, both parties stipulated, before the jury retired to deliberate on their verdict, that should they agree during the night and after the adjournment of court they might write out their verdict, date it, and the foreman sign it, inclose it in an envelope, seal it up, and the foreman take it with him, and the jury retire from the jury room and return their verdict into court at the opening thereof the following morning. The jury were also told, before retiring, that they were not at liberty to state to any person what their verdict was, until they had delivered it into court. Before they retired the court submitted to them the following forms of verdict: (1) We find the defendants guilty as charged. (2) We find the defendants guilty of larceny from the person. (3) We find the defendants guilty of assault, or, if you find one guilty and one not guilty, then you will so pronounce by your verdict. (4) We find the defendants not guilty. The jury retired at 5 :30 p. m. and at about 8 :45 p. m. agreed upon a verdict, which was reduced to writing, sealed in an envelope and placed in possession of the foreman, and the jury then dispersed, and were discharged from the custody of the sheriff who had charge of them while deliberating. At the opening

of court on the following morning, they entered the box and delivered to the court the following verdict:

"Milwaukee, Nov. 18, 1904.

"We, the jury, find defendant, Mr. Meyers, guilty as charged. We, the jury, find the defendant, *Mr. Koch,* guilty for larceny and also recommend the court to be lenient with *Mr. Koch.*          F. A. WOODFORD, Foreman."

Counsel for plaintiff in error moved that the verdict be recorded as read, whereupon the court replied that it would be recorded, but not until the court had questioned the jury as to what their intentions were when they found plaintiff in error guilty of larceny. Counsel for plaintiff in error also objected to the jury being permitted to orally contradict their written verdict, which objection was overruled and exception taken. The court then asked the jury if they meant to find plaintiff in error guilty of plain larceny, or larceny from the person, and the foreman answered: "Guilty of larceny from the person, is the way I understand it." The court then instructed the clerk to ask each juror whether he meant to find plaintiff in error guilty of larceny, or larceny from the person, and upon being asked the question by the clerk each juror answered that he meant to find him guilty of larceny from the person, to all of which counsel for plaintiff in error objected, and excepted to the proceedings and rulings of the court. Motion for new trial was made and denied, and the court sentenced Meyers and plaintiff in error each to a term of one year in the Wisconsin State Reformatory, from which judgment and conviction plaintiff in error sued out his writ of error.

*W. B. Rubin,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.*

KERWIN, J. The errors assigned raise the following questions for review: First, the exclusion of testimony; second,

whether the evidence was sufficient to sustain a conviction; third, whether error was committed in receiving and changing the written verdict; fourth, whether the court erred in refusing to instruct as requested, and in the instructions given.

1. The state produced as a witness one Kanter, who testified to facts tending to connect plaintiff in error with the crime charged. On cross-examination he was asked the following question: "Have you ever been arrested and convicted of being drunk and disorderly?" The question was objected to as incompetent, irrelevant, and immaterial, and the objection sustained, and this ruling is assigned as error. It is contended that the evidence sought to be adduced was proper under sec. 4073, Stats. 1898, and the ruling of this court in *Colbert v. State,* 125 Wis. 423, 104 N. W. 61. Sec. 4073 provides that a person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility, either by the record or his own cross-examination. The question asked on cross-examination, therefore, was competent under the statute if an answer in the affirmative would tend to prove that the witness had been convicted of a criminal offense. Sec. 1561 makes it a criminal offense, punishable by fine and imprisonment, for any person to be found in any public place in such state of intoxication as to disturb others, or unable, by reason of his condition, to care for his own safety or the safety of others. While the question asked did not cover specifically all the elements going to make up the offense under this statute, it was fairly intended to draw from the witness evidence tending to prove his conviction under this statute. So far as the record shows, this was the only question asked upon the subject, and it being competent to prove conviction under this statute, the evidence was proper and should have been admitted. *Thornton v. State,* 117 Wis. 338, 93 N. W. 1107. The question was not objected to because not sufficiently specific, and obviously was ruled out on the ground that evidence of

conviction of this offense was not competent. No objection is
made by the attorney general that the question was not suffi-
ciently specific to cover the criminal offense described in sec.
1561, Stats. 1898, but he insists that it was objectionable be-
cause it asked in one question two facts, one of which, as to
arrest, was entirely immaterial. We cannot see that this ob-
jection is tenable. While it would not be proper to ask the
witness whether he had ever been arrested, because an arrest
would be wholly immaterial unless followed by conviction,.
such question would not be prejudicial error when followed
by the further question relative to conviction. *Thornton v.
State, supra.* So we are unable to see that there was any
prejudicial error in embracing the two facts, arrest and con-
viction, in one question. Unless conviction could be proved
it would not be competent to prove arrest, and proof of arrest
was only competent in connection with proof of conviction.
Therefore there was no objection to the form of the question.

It is further contended by counsel for the state that the of-
fense sought to be proved by the question is not a criminal
offense under sec. 4073, Stats. 1898, because not made such
in localities where there is a municipal ordinance or regu-
lation for the punishment of drunkenness, and that in the
city of Milwaukee such offense is so punishable. We have
discovered no evidence in the record to the effect that there is
any ordinance or regulation upon the subject in the city of
Milwaukee, nor is the question confined to the commission of
a criminal offense in the city of Milwaukee. So far as ap-
pears from the record and the form of the question asked, the
criminal offense sought to be proved may as well have been
committed in any other locality as in the city of Milwaukee,.
and obviously may have reference to the commission of an of-
fense some place within the state of Wisconsin where there
was no municipal ordinance or regulation respecting the mat-
ter. Sec. 1561 being in force in all parts of the state, and the
question not being confined to any locality, it must be deemed

to have reference to a locality where no municipal ordinance·
or regulation had been passed. In *Colbert v. State,* 125 Wis..
423, 104 N. W. 61, this court did not pass upon the question·
whether a conviction for breach of an ordinance was a convic--
tion of a criminal offense under sec. 4073. The point was·
neither presented nor brought to the attention of·the court.
After the defendant had denied 'that she lived in Milwaukee·
in 1889 or had ever been convicted, the state offered in evi-
dence a certified copy of record of conviction of one Lucy La
Blanche for violation of one of the city ordinances on Novem-
ber 18, 1889. The evidence also tended to show that defend-·
ant lived in Milwaukee in 1889 and was then known as Lucy
or Lucille La Blanc or La Blanche, and the only question con-
sidered upon this ruling was whether the evidence showing·
identity of name was sufficient to establish *prima facie* iden-
tity of the person so as to authorize reception of the testimony
as bearing on the question of credibility. Whether a convic-
tion under an ordinance was a conviction of a criminal offense
was neither raised nor considered. At common law it was·
only convictions of crimes which rendered the person infa-
mous that excluded him from being a witness, and it was re-
garded a point of no small difficulty to determine precisely the·
crime which rendered the perpetrator thus infamous. It was
the infamy of the crime, not the nature or mode of punish-
ment, that rendered the witness incompetent.· 1 Greenl. Evi-
dence (16th ed.) §§ 372, 373; *Bartholomew v. People,* 104
Ill. 601; *State v. Taylor,* 98 Mo. 240, 11 S. W. 570. The·
rule of the common law, however, has been regulated by legis-
lative enactment. In England, by statute, "a witness may be·
questioned as to whether he has been convicted of any felony
or misdemeanor." 3 Taylor, Evidence, § 1437. Statutes·
exist in many of the states regulating the subject. In some
states such statutes have been held to remove the common-law
disability and permit proof of former conviction of infamous·
crimes only to affect credibility (*Card v. Foot,* 57 Conn..

427, 18 Atl. 713; *Bartholomew v. People, supra; Coble v. State,* 31 Ohio St. 100); while in other states statutes providing that a party who has been convicted of a criminal offense may testify, but that the conviction may be proved to affect his credibility, apply to misdemeanors as well as felonies. In New York, under a statute quite similar to ours, it is held that the statute was intended to establish a uniform rule and permit the conviction of a witness of any crime to be proved, and allow the effect of such conviction upon his credibility to be passed upon by the jury. *People v. Burns,* 33 Hun, 296. The same rule has been held in other states. In *State v. Sauer,* 42 Minn. 258, 44 N. W. 115, it is said: "From the earliest legislation in this state, all felonies and all misdemeanors have been denominated as 'crimes,'" and it is held that the conviction of any crime may be received to affect the weight of the witness's testimony. In Massachusetts, under a statute providing that "conviction of any crime may be shown to affect the credibility of any person testifying," it was held that the statute applied to any crime, and it is said: "It is obvious that some offenses that are not felonies may affect one's credibility much more than some felonies." See *Comm. v. Hall,* 4 Allen, 305; *Comm. v. Ford,* 146 Mass. 131, 15 N. E. 153; *Arhart v. Stark,* 27 N. Y. Supp. 301. Our statute on this subject (sec. 4073) provides:

"A person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer."

Under a similar statute in Missouri the court holds that the term "criminal offense," as used in the statute, includes both felonies and misdemeanors, and that evidence tending to show that witnesses had been convicted of misdemeanors was competent as affecting their credibility. *State v. Blitz,* 171 Mo.

530, 71 S. W. 1027. We think it clear, therefore, that "criminal offenses," within the meaning of sec. 4073, Stats. 1898, includes a misdemeanor. *Stoltman v. Lake,* 124 Wis. 462, 102 N. W. 920; *In re Bergin,* 31 Wis. 383; *State v. Blitz, supra; Comm. v. Ford, supra; State v. Sauer, supra; People v. Burns, supra.*

But the question arises here whether a conviction under a city ordinance is a criminal offense within the meaning of sec. 4073. Sec. 2598 defines a criminal action as one prosecuted by the state as a party against a person charged with a public offense. A crime or misdemeanor is defined to be "an act committed or omitted in violation of a public law either prohibiting or commanding it." 4 Bl. Com. 5; *In re Bergin,* 31 Wis. 383. "A crime is any wrong which the government deems injurious to the public at large, and punishes through a judicial proceeding in its own name." 1 Bishop, New Crim. Law, § 32. *State ex rel. Mixer v. Supervisors,* 26 Mich. 422, holds that the term "criminal cases" used in the laws refers only to prosecutions under the state laws, and prosecutions under city ordinances do not come within the term, and that "no offense is a crime which does not violate the law of the land." It has been held in New York, under a statute providing that a person who has been convicted of a crime or misdemeanor is, notwithstanding, a competent witness, but the conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or upon cross-examination, that a conviction under a city ordinance was not a conviction of a misdemeanor within the meaning of the statute. *Arhart v. Stark, supra.* See, also, on this proposition, *Stoltman v. Lake, supra; Coble v. State,* 31 Ohio St. 100; *Williams v. Augusta,* 4 Ga. 509; *Madison v. Horner,* 15 S. D. 359, 89 N. W. 474; *Davenport v. Bird,* 34 Iowa, 524; *Brookville v. Gagle,* 73 Ind. 117; *Kansas v. Clark,* 68 Mo. 588; *Byers v. Comm.* 42 Pa. St. 89; *Wiggins v. Chicago,* 68 Ill. 372. True, in *Boscobel v. Bug-*

*bee,* 41 Wis. 59, it was held that a prosecution under a city ordinance was *quasi*-criminal, but what was said there, when viewed in the light of other decisions of this court, clearly shows that it was not the intention of the court to hold that a conviction under a city ordinance was a conviction of a criminal offense within the meaning of this statute. *Oshkosh v. Schwartz,* 55 Wis. 483, 13 N. W. 552; *State ex rel. Milwaukee v. Newman,* 96 Wis. 258, 71 N. W. 438; *Ogden v. Madison,* 111 Wis. 413, 87 N. W. 568; *Stoltman v. Lake,* 124 Wis. 462, 102 N. W. 920; *State v. Bartlett,* 35 Wis. 287. We are therefore forced to the conclusion, upon principle and authority, that the term "criminal offense," within the meaning of sec. 4073, Stats. 1898, includes misdemeanors as well as felonies, but that conviction under a municipal ordinance is not a conviction of a criminal offense within the meaning of such statute.

2. Error is assigned on the ground of insufficiency of the testimony to sustain the conviction. It is claimed the evidence shows that plaintiff in error did not participate in, or have any intention of committing, the crime, and was wholly incapable, by reason of drunkenness, to form the intent necessary to commit the crime. Since there must be a new trial, in which event the evidence may differ from that upon the last, it is unnecessary to treat this assignment of error. But we may say in passing, without entering into a discussion of the evidence, that after careful examination we are convinced it is sufficient to support a conviction for the crime of larceny from the person.

3. Error is assigned because the verdict received was a nullity and could not be amended after the jury had separated. The sealed verdict returned into court found the plaintiff in error guilty of larceny only. There was no finding that he was guilty of larceny from the person nor of the value of the property taken. It is clear this finding was not sufficient to support the conviction. *McEntee v. State,* 24 Wis. 43; *La*

*Tour v. State,* 93 Wis. 603, 67 N. W. 1138; *Allen v. State,* 85 Wis. 22, 54 N. W. 999. The question, therefore, arises whether the verdict could have been amended upon the facts heretofore stated. It is contended on the part of the state that it was not error to permit the jury, even after separation, to correct and explain their verdict, and several cases are cited, civil and criminal, which, it is claimed, support this position. In *State ex rel. White Oak Springs v. Clementson,* 69 Wis. 628, 35 N. W. 56, it was held that the jury may, after announcing a verdict, if they see fit and before they are discharged, change the same and render a different one, and that where the jury have manifestly made an omission or mistake in their verdict the presiding judge may call their attention to that fact, and return it to them for correction. In *Victor S. M. Co. v. Heller,* 44 Wis. 265, after the jury had returned their verdict, the judge told them they were discharged, but immediately and before they left their seats or communicated with any one called their attention to imperfections in the verdict and put it in the form which they affirmed was intended, and it was signed by the foreman and declared by the jury to be their verdict. It was held that, it being clear that the verdict entered was the one intended, there was no error. In *Wightman v. C. & N. W. R. Co.* 73 Wis. 169, 40 N. W. 689, the jury returned a special verdict, and the court, finding the answers inconsistent, sent them to their room for further consultation, and after they returned sent them out again for further consultation, refusing to receive the verdict because defective, and afterwards, upon returning the verdict complete, it was recorded by the court. In these cases the jury had not separated during their deliberations, the changes in the verdicts being made during the time of deliberation and before discharge or separation and while the jury were still together as such. In *Reins v. People,* 30 Ill. 256, the jury were permitted by consent of parties to seal their verdict and separate. They appeared in court

the following morning and delivered it. No change was made or necessary in the verdict after it was sealed. The stipulation of the parties was strictly complied with. In *Marzen v. People,* 190 Ill. 81, 60 N. E. 102, one ground of error was that a juror was allowed to separate without the consent of defendant; but the facts in the case show that a juror became ill during the trial and before submission of the case to the jury for decision; that he was allowed to remain in the jury room and permitted to see his wife, a physician and one other party, while the balance of the jury were removed from the room. It did not appear that the juror was not attended by a sworn officer. In *State v. Harrison,* 36 W. Va. 729, 15 S. E. 982, a juror arose from his bed and left his room between 12 and 1 o'clock at night under the supervision of the sheriff, and was absent from four to eight minutes, returning to his room and not seeing any one while absent. In *Gott v. People,* 187 Ill. 249, 58 N. E. 293, it appeared that, during the trial of the case and before the jury retired to consider their verdict, jurors separated for a short time, but were accompanied by one or two bailiffs, and were not allowed to talk or be talked to or hear anything prejudicial to the plaintiff in error. In *State v. Williams,* 149 Mo. 496, 51 S. W. 88, after the jury were impaneled and before any testimony taken, one of the jurors went a short distance without being subjected to any improper influence, the other jurors waiting until his return. And in *Payne v. State,* 66 Ark. 545, 52 S. W. 276, some of the jurors temporarily separated from the others before any evidence was taken, but were subjected to no improper influence.

In the above cases the verdicts were sustained, and the errors complained of held not sufficient to disturb the verdicts. These cases are mainly relied upon here by counsel for the state, but it will be seen from a careful examination of them that they do not reach the question before us. The cases, however, are not altogether uniform upon this subject. Re-

spectable authority may be found holding that verdicts in criminal, as well as civil, cases can be amended after separation of the jury.  Proffatt, Jury Trials, §§ 456, 460; 1 Bishop, New Crim. Proc. § 1003; *Beal v. Cunningham,* 42 Me. 362; *Pehlman v. State,* 115 Ind. 131, 17 N. E. 270. This court held in a civil case (*Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054) that affidavits of the jurors after their discharge were competent to show the verdict actually rendered, where it appeared a mistake had been made in entering it.  The affidavits, however, were used upon motion for new trial, and the court did not order judgment upon the amended verdict, but granted a new trial.  As will be seen, a distinction is made in the case last cited between proceedings involved in reaching and agreeing upon a verdict and the mere fact of expressing it, either orally or in writing.  In *Allen v. State,* 85 Wis. 22, 54 N. W. 999, it was held that a defective verdict in a murder case could not be corrected either by the court or by reassembling the jury after they had been discharged.  In Illinois and Massachusetts it has been held that in a prosecution for felony it is error for the court to allow the verdict to be corrected or amended in matter of substance after it has been agreed upon, signed and sealed, and the jury has separated.  In *Farley v. People,* 138 Ill. 97, 27 N. E. 927, in a trial on charge of larceny, the court, with the consent of defendants' counsel, given in open court, directed that the jury be permitted to seal their verdict when arrived at and return the same into court at the opening session the following day, and on the same afternoon the jury separated and went to their respective homes, returning into court the following morning and producing what they intended as a sealed verdict of guilty as to both defendants. The verdict, however, failed to fix the term of imprisonment of one defendant.  Thereupon the court directed them to again retire and complete their verdict.  Defendant objected, but the objection was overruled.  After some delay the jury

brought in a second verdict, finding defendants guilty and fixing the punishment. Judgment was entered on the last verdict, and reversed on appeal on the ground that after the jury had separated they had no further power over their verdict. The court distinguished the case from separation during the trial, and said (138 Ill. 102, 27 N. E. 929):

"This is not the case of a jury having been allowed to separate during the progress of a trial, or coming in contact with the people generally, in which case it must appear that some injury resulted to the defendant, and therefore the authorities cited by counsel for the people have no application."

In *Comm. v. Dorus,* 108 Mass. 488, the case was committed to the jury with instructions that if they should agree upon a verdict during the adjournment of court they might seal it up and separate. In coming into court after adjournment it appeared they had agreed upon a verdict and separated without reducing it to writing. The judge then directed them to retire and reduce it to writing and return it without further deliberation. They accordingly retired, and soon afterwards returned a verdict in writing of guilty, signed by the whole panel. This verdict was affirmed by the jury upon the usual inquiry put by the clerk as directed by the court, under objection of defendant. On appeal the verdict was held invalid. In *Comm. v. Tobin,* 125 Mass. 203, 206, in a prosecution for felony; the court said:

"When the jury have been permitted to separate after agreeing upon and sealing up a verdict, there is this difference between civil and criminal cases: In a civil action, if the written verdict does not pass upon the whole case, or the jury refuse to affirm it, the court may send them out again, and a fuller or different verdict afterwards returned will be good. But in a criminal case the oral verdict pronounced by the foreman in open court cannot be received unless it is shown to accord substantially with the form sealed up by the jury before their separation."

We believe the rule in Illinois and Massachusetts, above cited, is best calculated to elevate the standard of jury trials

and preserve the purity and integrity of the jury system. Whatever tends to subject a jury to temptation or improper influence during the trial, and especially after they have retired for deliberation, should be jealously guarded against, to the end that the accused may be protected in his constitutional right of a fair trial by an impartial jury.

In the case before us the verdict agreed upon and delivered into court was a nullity. It was not sufficient to support a conviction, and to allow the jury after they had separated and mingled with the public to practically make a new verdict would be a dangerous practice, and contrary to a correct administration of the criminal law. Counsel cites *State v. Glass,* 50 Wis. 218, 6 N. W. 500, to the point that an oral verdict may be delivered in a criminal case. This is doubtless true, but the difficulty is that the verdict of the jury in the case at bar was not delivered orally. The jury agreed upon a verdict, signed and sealed it, and then separated. Their function for deliberation and agreeing upon a verdict ceased as soon as they separated. They had no further office to perform, except to deliver into court and announce the sealed verdict as the verdict of the jury. They could deliver this verdict orally, but they could not deliver a different verdict, orally or otherwise. *Comm. v. Tobin, supra.*

4. Error is assigned because of refusal to instruct as requested and because of instructions given. The errors complained of under this head cannot be considered for want of proper exceptions. The exceptions referred to by counsel for plaintiff in error as being in the record do not appear to have been incorporated in the bill of exceptions, therefore cannot be considered. But it is further claimed that exceptions were incorporated in motion for new trial, set forth in separate paragraphs, and assigned as reasons for new trial, and it is urged that under the ruling in *Wells v. Perkins,* 43 Wis. 160, the exception to the order denying motion for new trial was sufficient. We cannot think this contention tenable. The

plaintiff in error moved for a new trial on twelve separate and different grounds, and filed a general exception to the order denying the motion. In *Wells v. Perkins, supra,* the portion of the charge held erroneous was specifically pointed out in the motion for new trial, and no other part of the charge referred to, while here a considerable portion of the charge is set out in motion for new trial, embracing several separate and distinct propositions, some of which, at least, are correct statements of the law. The exception, therefore, to the order denying motion for new trial is not available on the question of error in the charge. Exceptions so general must be disregarded. It follows, therefore, that the court erred in excluding evidence on cross-examination, in permitting the verdict to be amended, and in denying the motion for new trial.

*By the Court.*—Judgment of the court below is reversed, and the cause remanded for a new trial.