State v. Weber.

---

THE STATE, Respondent, v. WEBER, Appellant.

1. The separation of a jury, in a criminal case, (an indictment for an assault with intent to kill,) after having written down and sealed their verdict and delivered the same to the officer in charge of them, though without consent and without the order of court, is not such misconduct as will authorize the Supreme Court to reverse and remand the cause.

2. Where, after a prisoner has announced himself ready for trial, and a witness for the prosecution has been examined in chief—all the witnesses for the prosecution having been sworn—it is discovered that the prisoner has never been formally arraigned, and by order of court he is then arraigned and pleads not guilty, and objects to any further proceeding in the cause, asking that he may be discharged; *held*, 1st, that it is not erroneous, to so cause him to be arraigned; 2d, that it is not erroneous, the jury being re-sworn, to proceed to examine the witnesses for the prosecution, without causing them to be re-sworn.

*Appeal from St. Louis Criminal Court.*

The facts sufficiently appear in the opinion of the court.

*Kribben* and *Jecko* for appellant. 1. The court below erred in arraigning the defendant after the jury had been empannelled and sworn, and the trial had been proceeded with; and the discharging of the jury, without their rendering a verdict after the

defendant had been put upon his trial under a charge of felony, is tantamount to an acquittal. That an arraignment is necessary, see 1 Chitty Crim. Law, 418; 2 Hale, 216, 218; 3 Mod. 265; 1 Show. 131; Com. Dig. tit. Indictment, M.; Hale's P. C. 293. It was erroneous to permit the same jury to be sworn after the arraignment, and after they had heard the evidence of the prosecuting witness. So also to permit the witnesses for the prosecution to be examined without being re-sworn. Up to the arraignment, the proceedings were illegal. 2. The separation of the jury, under the circumstances, is error. (1 Chit. Crim. Law, 634; Dunscombe, 201; 8 Mo. 154; 3 Just. 160; T. Raym. 183; 4 Bla. Com. 380.)

*H. A. Clover*, for the State, cited the following authorities: 8 Ohio, 480; 11 id. 474; 13 id. 492; 15 id; 82; 8 Mo. 158, 166.

RYLAND, Judge, delivered the opinion of the court.

The defendant was indicted for an assault with the intent to kill one Frederick Kolb. The indictment contained three counts; the first count charged the assault and stabbing to have been done by the defendant, with malice aforethought, with intent to kill. The second count with stabbing, with intent to kill; the same as the first count, leaving out the charge of malice. The third count charges that the defendant feloniously and wilfully, and by his act and procurement, did strike, stab, penetrate and cut the said Kolb, giving to him one wound, of the length of one inch, and of the depth of four inches; charging that the said Frederick Kolb was then and there in manner and form aforesaid, wounded, and did receive great bodily harm by the felonious act of him, the said George Weber.

There was a trial and verdict of guilty, under the third count, and punishment assessed to six months' imprisonment in the county jail and five hundred dollars fine. A motion for a new trial was made and overruled, and an appeal taken to this court.

The bill of exceptions shows that when the case was called,

the State, by her circuit attorney, and the defendant, who was personally present with his counsel, declaring themselves ready for trial, a jury was lawfully empannelled to try the same. After the trial had progressed and the State had examined in chief the first witness, it was discovered that the defendant had not been formally arraigned. Thereupon the court ordered that the defendant should be formally arraigned, which was done accordingly ; and thereupon the defendant pleaded not guilty. The court then asked the defendant if he was ready to proceed with his trial immediately, to which he answered, " as ready as he was before." The defendant did not wish to be understood as waiving any advantage the alleged illegality of the proceedings may allow him. He insisted upon all his legal rights in the premises, and protested against any further proceedings in the case against him, and moved that he be discharged from the offence and go hence without day. The court overruled this motion, and the defendant excepted. The jury were thereupon re-sworn to try the issue, and the witness re-examined in chief, and passed over to the defendant for cross-examination. The bill of exceptions, in one part, asserts that after the jury were sworn the first time, and before any testimony was given, all the witnesses for the State were duly sworn, but were not re-sworn ; yet the same bill of exceptions, when each witness is introduced, asserts that the witness " having been sworn, testified" as follows. The same entry is made in regard to the defendant's witnesses. Sometimes the word " duly" is inserted before the word sworn ; thus, " having been duly sworn." The objection appears at the time to have been made by the defendant, and, for aught that appears, the witnesses were properly sworn ; at least the record may be so considered. The party complaining must show by his bill of exceptions, beyond doubt, what he complains of, to be an act of the court on the record, and not leave it a matter for this court to decide, whether the thing be so or not—not leave it in doubt.

The bill of exceptions also shows that the jury, after they had retired to consider of their verdict, and were in charge of

an officer of the court, the court having adjourned over until the next day, did agree on their verdict, and did write down and seal it, and deliver it to the marshal to be kept, and then, without an order of the court or the consent of any one of the parties, did disperse until the hour of meeting of the court in the morning, when they again met in court; and the marshal, in their presence, handed over their verdict to the clerk, and it was read and received as their verdict by the court.

These various matters are alleged by the court for the defendant, in this court, as grounds for reversal of the judgment of the criminal court.

So far as regards the dispersing of the jury, after making up their verdict, sealing it and delivering it to the officer who had charge of them, and then separating until next morning and meeting in court to render their verdict, this act alone will not be regarded as any sufficient reason for setting the verdict aside. The mere dispersing of the jury is not enough to authorize the court to disregard their verdict. This point has been often ruled thus by this court. In two cases, decided at Jefferson city by this court at last term, (State v. Harlow, and State v. Igo, 21 Mo. 446 and 459,) the same doctrine is held. But if there be any reason to believe that the jurors, or any of them, have been tampered with, or improperly influenced, or any wrong means have been exerted over them, in consequence of their thus dispersing, in any manner so as to influence their verdict, then it should be set aside at once. But there is nothing of that character intimated here. There is, then, no ground for reversal, so far as this point extends.

There is nothing in the point of the swearing of witnesses. The state of the record will not justify this court in reversing for this cause, even if it were a good cause when it sufficiently appears upon the record. The defendant and his counsel saw these witnesses sworn; they knew they were sworn in his case to testify. Had the slightest intimation been made against their testifying, it could, and out of abundant caution might, have been obviated. But the record shows that the witnesses were sworn.

State v. Weber.

Upon the subject of arraignment we see no error. The formal arraignment and entering of the plea of not guilty, and the re-swearing of the jury, put the matter beyond cavil. In looking over the whole record, I have been unable to find any act of the court which is calculated to affect, injuriously, the defendant. There is no great necessity of the formal reading of the indictment to the prisoner, while he stands with uplifted hand, gazed at by the crowd; when he appears and enters his plea of not guilty, the trial might proceed without any unnecessary formula of olden times being insisted upon. The principal cause of the arraignment is to identify the prisoner; and when he appears and pleads to the indictment, what cause is there for arraigning him? The instructions were numerous enough to have error in them, being spread over six pages of the record; yet I find the law, in the main, correctly laid down. The jury might have had some trouble in comprehending the great mass of it laid before them, yet there is no reason to believe they were misled by it.

Since the doctrine of arraignment has been maintained, I will state my views upon it somewhat more at length. The term arraignment means the calling of the defendant to the bar of the court to answer the accusation contained in the indictment. (2 Lord Hale's Pleas of the Crown, p. 216.) *Arraigne* is *ad rationem ponere*, to call to account or answer. Lord Hale says that arraignment consists of three things: "First, the calling the prisoner to the bar by his name, and commanding him to hold up his right hand, which, though it may seem a trifling circumstance, yet it is of importance, for, by holding up his hand, *constat de personâ indictati*, and he owns himself to be of that name; second, reading the indictment distinctly to him in English, that he may understand his charge; third, demanding of him whether he be guilty or not guilty, and if he pleads not guilty, the clerk joins issue with him, *cul. prist*, and enters the prisoner's plea, then demands how he will be tried; the common answer is, "by God and the country," and thereupon the clerk enters *po. se.*, and prays to God to send

him a good deliverance." Now we find it is not necessary to go through the ceremony of holding up the hand in the case of a peer ; nor is it absolutely necessary in the case of a common person, it being sufficient that it appears to the court who is the person indicted. (Lord Delamere's case, State Trials, vol. 4, p. 211, and Lord Mohun's case, State Trials, same vol., p. 508.) Now all that is mentioned as the third ingredient of an arraignment is never put upon the record in our courts ; nor is it necessary to ask the prisoner how he will be tried. His plea of not guilty must, as a matter of course, be tried by a jury. In our country, the trial by battel was never recognized nor allowed, hence it never became necessary to ask the prisoner how he would be tried ; there was but one way to try his guilt or innocence—that was by a jury. He could not say " by God." Judge Story says, in order to ascertain why this inquiry, that is, " How will you be tried?" is made ; *it is necessary to state* that, anciently, in England, the party accused had his choice of being tried in one of two ways, by battel or by jury. If he chose the trial by battel, he was accustomed to say he would be tried by God ; if by a jury, that he would be tried by the country. (United States v. Gibert *et al.*, 2 Sumn. 68.) The trial by battel now in England is abolished, but the form of arraignment continued. Judge Story says, in all these states of the Union, where the constitution provides that the trial shall be by jury, and the prisoner pleads not guilty, *it seems to him* to be a mere mockery to ask him how he will be tried, for the constitution has already declared how it shall be. He continues : " But, be this as it may under the state governments, I am clearly of opinion, that the form is wholly unnecessary, under the constitution and laws of the United States, in the federal courts. The constitution has already declared, " that the trial of all claims, except in cases of impeachment, shall be by jury. It is imperative upon the courts, and prisoners can be lawfully tried in no other manner. As soon, therefore, as it judicially appears of record that the party has pleaded not guilty, there is an issue in a criminal case which the courts are

bound to try by a jury." (United States v. Gilbert, *et al.*, 2 Sumn. 69.) Our statute declares that "all issues of fact, in any criminal case, shall be tried by a jury." It also declares that " it shall not be necessary, when any person shall be arraigned upon any indictment, to ask him how he will be tried, and if he deny the charge in any form, or require a trial, or if he refuse to plead or answer, and in all cases when he does not confess the indictment to be true, a plea of not guilty shall be entered, and the same proceedings shall be had, in all respects, as if he had formally pleaded not guilty to such indictment." (Prac. in Criminal Cases, art. 5, sec. 5.) Now I hold it all sufficient, if a defendant, when called to answer an indictment, says he is not guilty. The clerk should enter such plea, and the trial might thereupon proceed. If the defendant wished to hear the indictment read, then it should be read to him before he is called to plead.

Upon the whole record in this case, we think the judgment should be affirmed. Let it therefore be affirmed; the other judges concurring.