ANNIE FARLEY *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa June 15, 1891.*

1. CRIMINAL PRACTICE—*separation of jury in a felony case—right of jury to correct verdict.* The record of the trial of two defendants for larceny contained this recital: "The court directed, with the consent of the defendants given in open court, that the jury be permitted to seal their verdict when arrived at, and return the same into court at the opening of the session of the day following." On the same afternoon the jury separated and went to their respective homes, returning into court next morning what purported to be a verdict finding the defendants guilty, but failing to fix the punishment of one of the defendants. The court directed the jury to again retire and complete their verdict, to which the defendants objected: *Held,* that the court erred in sending the jury back to complete the verdict, after the separation of the jury.

7—138 ILL.

2. The agreement of the defendants, on trial for a felony, made in open court, that "the jury be permitted to seal their verdict when arrived at, and return the same into court at the opening of the session of the day following," will not dispense with the necessity or duty of placing the jury in charge of a sworn officer; and if such agreement amounts to a consent that the jury may separate, it will not authorize the sending out of a jury the second time, after they have separated and mixed with other people, to pass upon the guilt of the defendants, or to fix the punishment to be inflicted on them.

3. Under our statute, as at common law, the jury trying a defendant on a charge of felony, upon retirement to consider of their verdict, must be placed in charge of a sworn officer, whose duty it is to keep them together to prevent others from speaking to them, and not to speak to them himself except to ask if they have agreed upon their verdict, and when they have so agreed, return them into court.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. DENEEN & McEWEN, for the plaintiffs in error:

The finding of the verdict after the separation of the jury was fatal error. *Waller* v. *State,* 40 Ala. 345; *Nolan* v. *State,* 53 Ga. 157; *Mills* v. *Commonwealth,* 7 Leigh, 751; Thompson on Trials, 2633; *Miller* v. *Mahon,* 6 Clark, 457.

Mr. GEORGE HUNT, Attorney General, for the People:

The separation of the jury, under the consent given, was no error, in the absence of proof of any facts showing that defendants were prejudiced. Proffatt on Jury Trials, sec. 460; Hirsch on Juries, secs. 634, 635; *McKinney* v. *People,* 2 Gilm. 553; *Jumpertz* v. *People,* 21 Ill. 375; *Beebe* v. *People,* 5 Hill, 32; *Smith* v. *Thompson,* 1 Cow. 221; *State* v. *Tilghman,* 11 Ind. 513; *State* v. *Babcock,* 1 Conn. 401; *Russell* v. *People,* 44 Ill. 508.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

At the January term of the Criminal Court of Cook county, 1891, plaintiffs in error were jointly tried for the crime of grand larceny, and both found guilty, the punishment of Far-

ley being fixed at one year and that of O'Brien at three years in the penitentiary. Two of the counts in the indictment charge the defendant O'Brien with a former conviction of the same crime, and an effort was made to convict her under the Habitual Criminal act of this State.

It appears from the evidence that on the 25th day of August, 1890, Mrs. Martha Rhode was passing along State street, in Chicago, when Nelly O'Brien stepped on the skirt of her dress. She said, "Excuse me," and passed to the left of Annie Rhode, a fifteen year old daughter, walking with her mother, and soon after, while in sight of Mrs. Rhode and the daughter, met the defendant Annie Farley, to whom the daughter testified she saw her give "something black." Almost immediately after this Mrs. Rhode discovered that a pocket-book, containing a twenty dollar bill, a two dollar bill and some small change, which she carried in her dress-pocket, was missing, and at once reported the loss to a policeman. That afternoon the defendants were arrested, being still together, and taken to the Central station, where, upon being searched, there was found upon the person of Annie Farley a pocket-book containing a twenty dollar bill, three two dollar bills and some change. This pocket-book was shown to belong to Miss Farley. Nothing was found in the possession of O'Brien corresponding with the missing pocket-book or money of Mrs. Rhode. A witness named Reed testified, that, being in the front of a basement on State street, about twelve or one o'clock on the day mentioned, an empty pocket-book came through the grating from the sidewalk, and fell in the basement. This he produced on the trial, and it was identified by Mrs. Rhode as the one lost by her containing the money above described. The evidence tends to show that the defendants passed over the basement in which this pocket-book was found, about the time Reed discovered it. The charge in the indictment is the larceny of a twenty dollar bill, belonging to Mrs. Rhode, and the theory of the prosecution on the trial was, that the twenty

dollar bill found in the pocket-book of Miss Farley at the station, was the identical bill of that denomination in the pocket-book of Mrs. Rhode when she missed it. The evidence offered on behalf of the People for the purpose of establishing this identification is very conflicting, and, to say the least, unsatisfactory, and as the case must be again tried, we refrain from discussing it. The defendants both testified on the trial, and positively denied that they took or had any knowledge of the taking of Mrs. Rhode's money.

It appears from the record, that after the trial had been completed and the jury sent out to consider of its verdict, "the court directed, with the consent of defendants given in open court, that the jury be permitted to seal their verdict when arrived at, and return the same into court at the opening of the session of the day following;" also, that the same afternoon the jury separated and went to their respective homes, returning into open court the next morning, and producing what they intended as a sealed verdict of "guilty" as to both defendants. This verdict failed to fix any term of imprisonment for the defendant Nelly O'Brien. Thereupon the court directed them to again retire and complete their verdict, but the defendants objected, and their objection being overruled, they duly excepted. Having again retired, after some delay they brought in a second verdict, finding the defendants guilty as before, and fixing the punishment. To the recording of this verdict exceptions were taken; also, motions for new trial and in arrest of judgment were made and overruled, and judgment of sentence pronounced on the last verdict.

It is now insisted that it was error to send the jury out a second time to deliberate upon their verdict, they having separated during the night. This error we think is well assigned. Under our statute, as at common law, the jury trying a defendant on a charge of felony, upon retirement to consider of the verdict, must be placed in charge of a sworn officer, whose duty it is to keep them together, to prevent others from speak-.

ing to them, and not to speak to them himself except to ask if they have agreed upon their verdict, and when they have so agreed, to return them into court. Section 435 of our Criminal Code (Rev. Stat. chap. 38,) is as follows: "When the jury retire to consider of their verdict in any criminal case, a constable or other officer shall be sworn or affirmed to attend the jury to some private and convenient place, and to the best of his ability keep them together without meat or drink, (water excepted,) unless by leave of the court, until they shall have agreed upon their verdict, nor suffer others to speak to them, and that when they shall have agreed upon their verdict he will return them into court: *Provided,* in cases of misdemeanor, only, if the prosecutor for the People, and the person on trial, by himself or counsel, shall agree (which agreement shall be entered upon the minutes of the court) to dispense with the attendance of an officer upon the jury, or that the jury, when they have agreed upon their verdict, may write and seal the same, and after delivering the same to the clerk may separate, it shall be lawful for the court to carry into effect any such agreement, and receive any such verdict so delivered to the clerk as the lawful verdict of such jury."

Waiving the question as to whether, under this section, the court can lawfully dispense with a sworn officer, and authorize a jury, in trials for felony, to seal their verdict and separate, even by consent of the parties, it is clear that this record would sustain no such verdict in any case, even that of a misdemeanor. The only evidence of an agreement here found is the recital, "the court directed, with the consent of the defendants given in open court, that the jury be permitted to seal their verdict when arrived at, and return the same into court at the opening of the session of the day following." There is no agreement that a sworn officer might be dispensed with or that the jury might separate before they had returned their verdict into open court. There is, in fact, nothing in this rec-,

ord to show that the court in any way did dispense with a sworn officer or did authorize the jury to separate.

But if it should be conceded that consent to a sealed verdict is, in effect, consent that the jury may separate, certainly it can not be seriously contended that this record shows an agreement that the jury might be sent out a second time, after having separated and mixed with other people, to pass upon the question of their guilt or innocence, or to fix the punishment which should be inflicted upon them. The most that is claimed is, that such consent should be implied from the agreement to a sealed verdict. Such an inference is entirely too far-fetched. Besides, the attempt here is to dispense with a plain requirement of the statute, wisely enacted for the protection of not only a defendant charged with a high crime, but also to secure the People against all improper influences over juries after the question of the guilt or innocence of a defendant has been submitted to its deliberation, and we are not disposed to extend agreements made under it by implication. See *Lewis* v. *The People*, 44 Ill. 452, and *Williams* v. *The People*, id. 478, as applicable in principle to the question here involved. This is not the case of a jury having been allowed to separate during the progress of a trial, or coming in contact with the people generally, in which case it must appear that some injury resulted to the defendant, and therefore the authorities cited by counsel for the People have no application.

We think there was manifest error in sending the jury to its room the second time, over defendant's objection, and for that error the judgment of the Criminal Court must be reversed and the cause remanded for another trial. We find no other reversible error in the record. There are some irregularities appearing, but they are unimportant, and will doubtless be avoided on another trial without special reference thereto by us.

*Judgment reversed.*