## LIVERPOOL & L. & G. INS. CO. v. N. & M. FRIEDMAN CO.

(Circuit Court of Appeals, Sixth Circuit. November 30, 1904.)

### No. 1,320.

1. INSURANCE—CAUSE OF LOSS—FIRE—INSTRUCTIONS—REFUSAL OF REQUEST.

Where, in an action on a policy, the court charged that plaintiff must show that fire existed in the building before it fell, and that in determining such question the jury should consider all the evidence bearing on the subject, and that, if they were not convinced from the evidence that there was fire in the building before it fell, their verdict must be for the defendant, it was not error for the court to refuse to charge that the jury could not find such a fire by conjecture simply because there were combustible materials in the building at the time, nor because there were conditions in the building at the time it fell which might possibly have produced a fire, and that plaintiff, in order to recover, must show by a preponderance of the evidence that there was a fire consuming the building or its contents before it fell; his showing that there might have been such a fire not being sufficient.

2. SAME.

Where plaintiff in an action on a policy claimed that the building fell as the result of a progressive fire, and not from an explosion, unless caused by such progressive fire; and the court charged that if an explosion occurred, which was not caused by a progressive fire, and the explosion was the cause of the collapse, plaintiff could not recover, but, if there was a fire in the building before, which was progressing at the time some explosion occurred, that, under the terms of the policy, would be a fire loss for which defendant would be liable—such instruction covered a request that an explosion, to render defendant liable, must be caused by a fire in the building or its contents, and that exploding of gas by a spark (there being no fire at the time consuming the building or its contents) would not render defendant liable, there being no evidence tending to show that there was any damage from an explosion caused by a spark.

3. FEDERAL COURTS—STATE PRACTICE—CONFORMITY—SUBMISSION OF CAUSE—DELIBERATION OF JURY.

U. S. Rev. St. § 914 [U. S. Comp. St. 1901, p. 684], requiring federal courts in civil causes, other than equity, to conform as near as may be

¶ 3. Conformity of practice in common-law actions in federal courts to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.

to state practice, etc., does not require federal judges to conform to state regulations in the submission of cases and the control of the deliberations of juries; such proceedings being governed by the common law.

**4. SAME—SEPARATION.**

Where, in an action on a fire policy, all of the members of the jury lived outside the city where the fire occurred and the trial was held, a verdict was not vitiated by the court's permitting the jury, in the absence of counsel, to separate after the case had been submitted to them, and go to their homes for Thanksgiving Day; no misconduct, improper influence, or prejudice on the part of any member of the jury during the separation being shown, and it not being claimed that the jury, or any member thereof, was improperly influenced or prejudiced by reason of the separation.

In Error to the Circuit Court of the United States for the Western District of Michigan.

Crane, Norris & Drew, for plaintiff in error.

Knappen, Kleinhans & Knappen, G. A. Wolf, and J. H. Tatem, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This case grew out of the destruction early on the morning of July 18, 1901, of a four-story brick building in Grand Rapids, Mich., known as the Luce Block. The defendant in error conducted a department store in the building, and the policy sued on was upon his stock and fixtures. The occurrence resulting in the destruction of this building and its contents was before us in the case of Phœnix Insurance Company v. Luce, 123 Fed. 257, 60 C. C. A. 655, in which we affirmed a judgment on a policy of insurance on the building. In that case, as in this, it was a question whether there was a fire in the building before it fell; and we held that the testimony tending to prove there was such fire was both material and substantial, and justified the trial judge in declining to direct a verdict for the defendant upon the ground there was no evidence warranting a submission of the case to the jury.

The policy sued on contained, among others, the following conditions:

"This company shall not be liable for loss caused directly or indirectly, by invasion, insurrection, riot, civil war or commotion * * * or (unless fire ensues, and in that event for damage by fire only) by explosion of any kind."

"If a building or any part thereof fall except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

In this case, as in the Phœnix Case, the defendant contended there was no fire in the building before it fell, and it fell from structural weakness due to certain alterations then going on. There was a verdict for the plaintiff; the jury finding, in answer to questions, that there was a fire burning in the building before and at the time it fell, and that no part of it fell except as the result of fire.

The case went to the jury about 2 o'clock on the afternoon of the day before Thanksgiving Day. At 5 o'clock that afternoon the

trial judge sent for the jury, and, no agreement having been reached, permitted them to separate and go to their homes for Thanksgiving; cautioning them not to talk to any one or permit any one to talk to them about the case, and directing them to return at 2 o'clock on the afternoon of the day following Thanksgiving and resume their deliberations. This was done in the absence of counsel, and, when counsel for the defendant were advised of it, they took an exception, which was allowed.

It is claimed, first, the court erred in refusing to give certain charges; and, second, in permitting the jury to separate after the submission of the case.

1. As to the refusals to charge. The second and third requests, which were refused, were as follows:

"Second. Such a fire you are not authorized to find by conjecture, simply because there were combustible materials in the building at the time, nor because there were conditions in the building at the time it fell which might possibly have produced a fire.

"Third. The plaintiff, to recover, must show by a preponderance of the evidence that there was a fire consuming the building or its contents before it fell. His showing that there might have been such a fire is not sufficient to authorize plaintiff's recovery."

The charge given by the court in this case was substantially that approved by us in the Phœnix Case. The court clearly charged the jury that it was incumbent upon the plaintiff, by a preponderance of the evidence, to satisfy them that fire existed in the building before it fell, and that in determining this question they should consider all the evidence bearing upon the subject; that if they were not convinced, and could not say from the evidence, that there was fire in the building before it fell, then their verdict must be for the defendant. This was sufficient. It advised the jury they were to consider not simply the matters referred to in these requests, but all the evidence, in determining whether there was or was not a fire in the building before it fell. For the court to have mentioned certain evidence, and instructed the jury they were not to conjecture from it that there was a fire in the building, would not only have discredited the evidence mentioned, but led the jury to believe there was no other evidence upon that point. Now, we held in the Phœnix Case that, looking at the entire record, the evidence tending to show there was fire in the building before it fell was both material and substantial. The same evidence is present in this case. A finding based upon such evidence could not, even prospectively, be treated as a mere conjecture. The requests were properly refused.

The sixth request was as follows:

"Sixth. An explosion, to render defendant liable, must be caused by fire in the building or its contents. The exploding of gas by a spark, there being no fire at the time consuming the building or contents, would not render defendant liable."

The claim of the plaintiff, as shown by the record, was that the building fell as the result of a progressive fire, and not from explosion, unless caused by such progressive fire. While the jury was instructed that an explosion caused by a progressive fire would

be a fire.loss, within the meaning of the policy, it was also in-
structed that there could be no recovery, even though the building
was on fire before it fell, unless it fell as a result of such fire, and
that a collapse caused by an explosion not resulting from fire would
defeat a recovery.   Upon this point the court said:

"If an explosion occurred which was not caused by a progressive fire, and
that explosion was the cause of the collapse, the plaintiff cannot recover. If
you find there was fire in the building before, and if you find from this fire,
which was progressing at the time, some explosion occurred, that, under the
terms of the policy, would be a fire loss, and the defendant would be liable
for the loss which ensued."

We think this covers all of the request which was based upon the
evidence.   It is now suggested that an explosion caused by a spark
might have occasioned damage to the stock, and that there was no
evidence distinguishing this damage from that caused by a subse-
quent fire, and therefore could be no recovery.   But there is noth-
ing in the record tending to show there was any damage from an
explosion caused by a spark.   The suggestion, coming after the
trial, is at best a "mere conjecture."   The court was right in re-
fusing the request.

2. This brings us to the separation of the jury.   It is contended
that section 914, Rev. St. U. S. [U. S. Comp. St. 1901, p. 684], re-
quired the court to follow the Michigan practice, and that under
it, and by the common law, the separation of the jury after the
submission of the case, although by permission of the judge, viti-
ated the verdict.   It is not necessary to determine what is the rule
in Michigan, for section 914 no more places federal judges under
state regulations in controlling juries than in charging them.   The
power of federal judges, as defined by the common law, in the sub-
mission of cases and the control of the deliberations of juries, still
remains.   Indeed, it is a question whether Congress can, under the
Constitution, abrogate or abridge such power.   As was said by the
Supreme Court in Nudd v. Burrows, 91 U. S. 426, 442, 23 L. Ed.
286:

"The identity required [by section 914] is to be in 'the practice, pleadings
and forms and modes of proceedings.'   The personal conduct and administra-
tion of the judge in the discharge of his separate functions is, in our judg-
ment, neither practice, pleading, nor a form nor mode of proceeding, within
the meaning of those terms as found in the context."

In Railroad Company v. Horst, 93 U. S. 291, 23 L. Ed. 898, it was
held (page 300, 93 U. S., 23 L. Ed. 898) that "matters relating mere-
ly to the mode of submitting the case to the jury" do not come
within section 914; and in Chateaugay Iron Company v. Petitioner,
128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508, the court said (page
554, 128 U. S., 9 Sup. Ct. 150, 32 L. Ed. 508) that "the object of
section 914 was to assimilate the form and manner in which parties
should present their claims and defense, in the preparation for the
trial of suits in the federal courts, to those prevailing in the courts
of the state."

Section 914 having no application, did the mere separation of the
jury after the submission of the case vitiate the verdict at common
law?   We are clear it did not.   All the members of the jury lived

outside Grand Rapids, where the fire occurred and the trial was held. No improper conduct on the part of any member of the jury during the separation was shown or charged. It is not claimed that the jury, or any member of it, was approached or tampered with, or in any way improperly influenced or prejudiced, by reason of the separation. Conceding that a new trial may properly be granted where it is shown that prejudice resulted from the separation, no occasion for the exercise of such power was shown in this case. Walton v. Wild Goose Mining Company, 123 Fed. 209, 60 C. C. A. 155, 157; 12 Enc. Pl. & Pr. 579, and cases cited; Thompson & Merriam on Juries, §§ 310, 315, 316.

In conclusion, it is proper to point out that, in permitting the separation complained of, the trial judge but continued the practice pursued by him in McEvoy v. Mangold Milling Company, 124 Fed. 1018, 59 C. C. A. 681. That case was before us upon the very question involved in this case, namely, whether the judge had the power to permit the jury to separate after the case had been submitted, was fully argued, and the judgment affirmed on October 18, 1902, although without a written opinion. It is now sought to distinguish it on the ground that the case was one in bankruptcy, where the rules governing juries in common-law actions do not apply; but the bankruptcy act of July 1, 1898, provides (section 19a, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]), "A person against whom an involuntary petition has been filed shall be entitled to have a trial by jury, in respect to the question of his solvency," etc.; and the Supreme Court held in Elliott v. Toeppmer, 187 U. S. 327, 332, 23 Sup. Ct. 133, 47 L. Ed. 200, that when, under this provision, "a jury trial is demanded, it is demanded as of right, and the trial is a trial according to the course of the common law."

The judgment of the lower court is affirmed.