PEOPLE v. DUFFEK.

1. CRIMINAL LAW—TRIAL—VERDICT

In a prosecution for assault with intent to kill and murder, a verdict signed and sealed by the jury before they separated, reading as follows: "Assault with intent to do great bodily harm, less than the crime of murder," was a sufficient statement of the conclusion.

2. SAME—CHANGING SEALED VERDICT.

No substantial or prejudicial change was made by the jury's opening the sealed verdict, with the permission of the trial court, after reassembling, and prefixing the phrase, "We, the undersigned jurors, find the respondent, Andrew Duffek, guilty of."

3. SAME—TRIAL—JURY—SEPARATION.

While 3 Comp. Laws, § 11960, requires jurors in a case involving a prosecution for murder to remain together from the time they are elected until they render their verdict, no rule or statute prohibits them from separating in other classes of criminal cases. See Act No. 4, Pub. Acts 1909, amending § 11960.

4. SAME—SEALED VERDICTS—SEPARATION OF JURY.

Whether or not a jury has separated after signing and sealing but before returning their verdict in court, it is the right of any juror to refuse to assent publicly to the verdict which is announced.

5. SAME—CONSTITUTIONAL LAW—SEALED VERDICT.

  No constitutional right of the accused is infringed by the
  jury's being permitted to separate after agreeing upon, seal-
  ing, and delivering to the officer having them in charge, a
  verdict to which they afterwards assent publicly in court.

Exceptions before sentence from Grand Traverse;
Mayne, J. Submitted June 27, 1910. (Docket No. 114.)
Decided November 11, 1910.

Andrew Duffek was convicted of assault with intent to
do great bodily harm, less than the crime of murder.
Affirmed.

*Parm C. Gilbert* and *John W. Patchin*, for appellant.

*Fred H. Pratt*, Prosecuting Attorney, for the people.

The cause is here on exceptions before sentence. The
material facts, briefly stated, are: Respondent was
charged in the information with having made an assault
with intent to kill and murder. The jury retired to con-
sider of their verdict and were brought into court late in
the evening and instructed that if they reached an agree-
ment during the night they might write and sign the ver-
dict, deliver it to the officer having them in charge, who
should deliver it to the clerk of the court, and might then
separate, appearing in court the following morning, at
which time each must assent to the verdict, meantime
keeping secret and refusing to talk about it. Respondent,
who was at large upon bail, was present when this in-
struction was given, but his counsel were not present.
The jury (each member thereof) signed and sealed a ver-
dict in the following form:

                    "TRAVERSE CITY, MICH.,
                        "March 10, 1910, 3 a. m.
  "Assault with intent to do great bodily harm less than
the crime of murder."

Which was duly delivered to the officer in charge and
by him to the clerk of the court, was not opened, nor

were its form or contents made known to respondent or to the court until after the second verdict had been received and entered. At the opening of court 11 jurors appeared; one juror being ill. The jury again separated, being cautioned as they had been the previous evening. The morning of March 11th, at the opening of court, all the jurors being present, the foreman of the jury reported to the judge that he thought there was an error in the form of the verdict, and at his request it was returned to the jury unopened and unannounced, the jury retired and later returned into court with a sealed verdict, signed by each of them, containing the additional words,

"We, the undersigned jurors, find the respondent, Andrew Duffek, guilty of."

The clerk received the sealed verdict last returned from the foreman of the jury, called the names of the jurors, opened the verdict, and by direction of the court read it, polled the jury, and recorded the verdict. Motions to set aside the verdict and for a new trial and to discharge respondent were overruled.

OSTRANDER, J. (*after stating the facts*). The exceptions present the questions: (1) Whether, on the trial of one charged with having committed a felony, the jury may be permitted to separate after agreeing upon, signing, sealing, and delivering to the officer having them in charge, a verdict, and afterwards return into court and assent publicly to the result so agreed to; (2) whether, in such a case, the sealed verdict having been delivered to the clerk, it may be returned to the jury, upon the request of the foreman, by direction of the court, unopened and unannounced, for correction, and, having been corrected in form only, it may be received as the verdict of the jury.

There is a further contention stated in the brief, which is that the verdict first signed is not sufficient to support a judgment. The argument for appellant is confined largely to a statement of his contentions, and a single authority (*Farley v. People*, 138 Ill. 97 [27 N. E. 927]) is cited.

In Illinois the subject is governed by statute which permits the taking of sealed verdicts in criminal cases if the respondent expressly consents to such a course.  The questions have never before been presented in this court.

The second question, upon the facts stated, should be answered in the affirmative, provided the first question is also answered affirmatively.  The writing first made and signed by the jury was a sufficient statement of the result arrived at and was the identical result stated in the verdict announced.  In this jurisdiction verdicts, in criminal cases, are usually announced orally—are not first written —and in answer to the usual question propounded by the clerk of the court it is not uncommon for the foreman of the jury to state no more than that the verdict is "guilty," adding words necessary to indicate the offense or the degree or element thereof.  Being reduced to the usual formula by the clerk, it is repeated by him back to the jury for reaffirmance.  There can be no doubt that the two verdicts as written by the jury announce the same conclusion, and no doubt concerning the conclusion arrived at.  I am satisfied, too, if the fact is found to be material, if the consent of respondent that a sealed verdict might be returned was essential, that such consent was not given, and that the cause stands precisely as it would if such consent had been refused.

The first question must be answered by reference to the Constitution, and beyond that to the incidents of trial by jury contemplated by the Constitution, to some statute, or to some rule of practice so reasonable and so long and uniformly followed that a failure to follow it may be said to invade a right of the accused.  The provisions of 3 Comp. Laws, §§ 11960–11962, apply only to cases in which the accused is on trial for murder.  Act No. 4, Pub. Acts 1909, purports to amend 3 Comp. Laws, § 11960.  Whether the section as amended is within the title of the original act, we need not determine since we are of opinion that the provisions of said Act No. 4 are not controlling of the

question here presented. The provisions of the Constitution which may be supposed to in any manner support the contention which is made are found in sections 27 and 28 of article 6.[1] The first of these provides that the right of trial by jury shall remain, and this provision, it has been held, secures to a respondent all of the essential incidents of trial by jury as it existed at the time of the adoption of the Constitution.

"The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood, under a particular name; and, by implication at least, even a waiver of its advantages is forbidden. If the accused himself cannot waive them, plainly the legislature cannot take them away. The next section of the Constitution repeats the guaranty of this method of trial 'in every criminal prosecution,' and nothing is better settled on the authorities than that the legislature cannot take away a single one of its substantial and beneficial incidents;  *  *  *  and even the accused cannot waive any one of the essentials." *Vide,* COOLEY, J., in *Swart* v. *Kimball,* 43 Mich. 443, 448 (5 N. W. 635, 637).

See, also, *Hill* v. *People,* 16 Mich. 351; *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633); *People* v. *Marion,* 29 Mich. 31. It was said by Mr. Justice CHRISTIANCY, in *Hill* v. *People,* 16 Mich. 351, 357:

"The true theory, we think, is that the people, in their political or sovereign capacity, assume to provide by law the proper tribunals and modes of trial for offenses, without consulting the wishes of the defendant as such; and upon them, therefore, devolves the responsibility, not only of enacting such laws, but of carrying them into effect, by furnishing the tribunals, the panels of jurors, and other safeguards for his trial, in accordance with the Constitution, which secures his rights."

But what are the substantial and beneficial incidents thus guaranteed? The power of the legislature to change the qualifications of jurors and the manner of their selection is not doubted. *People* v. *Harding,* 53 Mich. 48

---

[1] Const. of 1850. See §§ 13, 19, Art.2, Const. 1909.

(18 N. W. 555, 51 Am. Rep. 95). It is error to refuse a demand of a respondent to poll the jury. *Stewart* v. *People*, 23 Mich. 63 (9 Am. Rep. 78). But very often the exercise of this right is not claimed. It will be difficult to state any general rule according to which the rights of an accused person, guaranteed by the Constitution, may be determined, especially where they are immediately grounded on some alleged failure of procedure. It is the purpose of the law, alike in civil and in criminal causes, to secure in the verdict of a jury a result unaffected by extrajudicial influences, one based upon the evidence given in court and the instructions of the court. In this the State is interested quite as much as is the individual suitor. Various precautions have at different times been taken to secure such a result in criminal causes which have not been deemed necessary in civil causes. Not all of them were for the peculiar benefit of the accused, but some of them rested and rest in considerations of public policy and the fair administration of the law. The consequences of verdicts in criminal causes are supposed to have a significance and effect both with respect to the public and the accused which does not exist when merely private adversary conditions are involved. This idea is reflected, to some extent, in distinctions made in procedure in trials of those accused of felony and those accused of misdemeanor only. It is reflected, also, in the statute which has been referred to, which relates only to trials of those accused of murder. In criminal causes, if treason or felony was charged, it was the early practice in England to refuse the jury permission to separate during the recesses of court and to keep them together in charge of an officer of the court. They were, virtually, prisoners. Necessity compelled relaxation of the rule, and after a time jurors were permitted to retire for rest and refreshment, but not to go to their homes or to mingle with the general public. See *Hardy's Case*, 24 Howell's State Tr. 414; *Rex* v. *Stone*, 6 Term Rep. 527; Thompson & Merriam on Juries, tit. 2, entitled "Of the

Custody and Conduct of Trial Juries." Judges in the United States and in England have long since exercised the power of permitting jurors, in criminal causes, to separate and to go to their homes, from day to day, during the progress of the trial and before the cause was finally committed to the jury, and courts of error have held that, in the absence of some circumstance tending to prove improper conduct of jurors or improper influences affecting a verdict, the practice afforded no reason for disturbing a verdict. On the other hand, it has not been uncommon for trial courts, in view of known or suspected conditions, to require jurors to remain in the charge of an officer of court during the entire course of the trial. It is the common practice in this jurisdiction, in civil and in criminal causes, to keep jurors, after the charge of the court has been delivered, together until a verdict has been returned. Usually the court is in session when an agreement of the jury is reached, and in such cases not even convenience would be served by receiving a sealed verdict. Occasionally convenience, and something more, is sacrificed if a jury, after having reached a conclusion, is forced to remain in retirement until the opening of court.

In *Pierce* v. *Pierce*, 38 Mich. 412, it was said:

"There is no legal propriety in keeping a jury confined unreasonably after they have come to an agreement. * * * Any unusual and prolonged delay is not to be favored without giving an opportunity to find a sealed verdict."

In *Liverpool, etc., Ins. Co.* v. *Friedman*, 133 Fed. 713, 66 C. C. A. 543, a case in which the trial judge, after charging the jury, permitted them to go to their homes for Thanksgiving day and reassemble and find and return a verdict, it was held that common-law rules of practice controlled, and, whatever the practice was in Michigan (in which State the cause was tried), there was no legal objection to the course pursued, no improper conduct of any juror being shown or charged, and no claim made that any had been approached or influenced with

respect to a verdict.    It is not unreasonable to assume that
the practice pursued in the case of *Stewart* v. *People,*
*supra,* the respondent being also given the right to poll
the jury, has been regarded by the profession as proper
practice in criminal causes.    It is a practice approved, by
statute or otherwise, in a considerable number of the
States.    The bill of exceptions in that case discloses that
respondent was charged with having committed a felony;
that counsel for respondent, in the presence of respondent,
consented that a sealed verdict might be returned; and
that the jury separated after signing and sealing the ver-
dict.    It discloses that the reason for the ruling of the
trial court was that, the jury having separated after sign-
ing and sealing the verdict which had been returned, the
only inquiry open was whether the jurors had all joined in
the written verdict before they separated, and "no ques-
tion having been raised in respect to the jurors having all
joined in the sealed verdict returned to the court, and
such sealed verdict purporting to be signed by all
the jurors," the right to poll the jury was denied.    But if
the practice there pursued, as corrected by this court, is
proper practice—is not open to criticism by the accused
person—it does not follow, of necessity, that other prac-
tice, namely, the return and acceptance of a sealed verdict
without the consent of the accused, is not also proper prac-
tice.    Arguments to support the assertion that the trial
court may not, in the absence of a statute, in the exercise of
sound discretion, direct the signing and sealing of a ver-
dict in criminal causes, must rest, I think, upon one or
both of two grounds.    One is that jurors may be im-
properly influenced after they have separated and before
they assent, in open court, to the verdict they have sealed;
the other is that, if the sealed verdict is defective in sub-
stance, or is not assented to in open court by all of the
jurors, the cause may not be recommitted to the jury and
there must be a new trial.

Whether or not a jury has separated before returning a
verdict in court, it is the right of any juror to refuse to as-

sent publicly to the verdict which is announced. If a jury signs and seals a verdict and separates, and later the verdict is returned and read in court and assented to by the jury, and by each of them, if required to do so, it would seem that no presumptions should be indulged that after separation improper influences had affected the verdict. Indeed, in Massachusetts, in such a case, the oral verdict is the verdict of the jury, and the sealed verdict is regarded, principally, to ascertain whether it agrees with the verdict returned orally in court. An argument based upon the idea that improper influence *might* be exercised after separation of the jurors, for which reason they ought to be kept together until a verdict is rendered, would also support the proposition that in all criminal causes jurors should not separate after the case is opened to them until they have been finally discharged by the court; a practice which, out of caution, and because of peculiar conditions, is often pursued, but the failure to pursue it is not, of itself, in most jurisdictions, at least, held to be error. It is clear that the consent of the accused that one or other practice be followed will not estop him to question a verdict on the ground that it has been improperly procured.

The other ground, namely, the hazard attending the sealing of the verdict, better supports a reason for receiving one only by consent of the accused. There is most respectable judicial authority and good reason for saying that in a criminal case the functions of a jury have been discharged when they have concluded deliberations and have agreed to, signed, and sealed a verdict, and that after having separated they have no further duty to perform in the case except to deliver to the court and announce the sealed verdict to be the verdict of the jury. *Koch* v. *State*, 126 Wis. 470 (106 N. W. 531, 3 L. R. A. [N. S.] 1086); *Farley* v. *People*, 138 Ill. 97 (27 N. E. 927). This rule has been applied in cases where the sealed verdict which was returned required substantial correction and the question was whether the jury could be permitted to again retire for the purpose of amending the

verdict otherwise than in mere form.  See, also, *Hechter*
v. *State*, 94 Md. 429 (50 Atl. 1041, 56 L. R. A. 457), and
*Williams* v. *People*, 44 Ill. 478; and, as apparently an-
nouncing a different rule, see *Pehlman* v. *State*, 115 Ind.
131 (17 N. E. 270), and *Jackson* v. *State*, 45 Ga. 198.
In all of these cases the sealed verdict was rendered by
consent of the accused.  In this view of the functions of
a jury, which I think is the proper view, the dissent of
one juror from the sealed verdict, as well as the sealing of
a verdict defective in substance, would alike result in a
mistrial.   This result, at least in most cases, would not
occur if the jury rendered the verdict orally, through their
foreman, before separating.  And in this view the con-
sent of the accused that a sealed verdict may be returned
has some significance.   But, whether argument proceeds
upon one or the other of the grounds stated, it does not
reasonably support the idea that the practice pursued in-
volves an essential incident of trial by jury guaranteed by
the Constitution.   On the contrary, all such argument
and the circumstance that the practice differs in different
common-law States (so-called), and that in many States a
practice has been established by statutes, furnishes per-
suasive support of the proposition that the whole matter
is one of practice, and that there is no constitutional or
so-called common-law right of an accused person to have
jurors kept together until a verdict is returned into court.
There is authority which would require this statement to
be qualified to this extent only, that in capital cases the
jury should be kept together, a precaution which the ac-
cused may not dispense with.   An examination of decis-
ions discloses that it is the uniform practice—sometimes
statutory—to permit sealed verdicts to be returned where
a misdemeanor is charged, in the discretion of the court.
This is the rule of the Federal courts.

In *United States* v. *Bennett*, 16 Blatchf. 338, 373,
Fed. Cas. No. 14,571, it appears:

"That the direction in writing to the jury that they
might deliver a sealed verdict to the officer, and might

then separate, was exhibited to the counsel for the prisoner before it was sent to the jury by the court; that the jury strictly followed such direction; that the court received the sealed verdict from the officer the next morning, in the presence of the jury and of the defendant, in open court, after the jury had then and there announced that they had agreed upon a verdict and that such sealed verdict contained it; that the verdict of guilty announced and recorded was the verdict contained in such sealed verdict; and that, on the polling of the jury, at the request of the counsel for the defendant, each juror stated that the verdict announced was his verdict."

The opinion proceeds:

"It is laid down in Wharton's Criminal Law (6th Ed.), § 3,125, that, 'in misdemeanors, there is no difficulty, in practice, in permitting the jury to separate during the trial.' In the present case, the statute expressly declares the offense to be a misdemeanor. Wharton cites the leading case of *Rex* v. *Woolf*, 1 Chitty, 401, where it is held that, in a case of misdemeanor, the dispersion of the jury does not vitiate the verdict. *A fortiori*, a dispersion after agreement, and after the verdict is written and signed and sealed up, and where the jury afterwards attend in court with it, and the court receives and opens it, and the jury give an oral verdict in accordance with it, on being polled, does not vitiate the trial. In *People* v. *Douglass*, 4 Cow. (N. Y.) 26 (15 Am. Dec. 332), it is laid down that the mere separation of a jury is not a sufficient cause for setting aside a verdict either in a civil or a criminal case, if there be no farther abuse. In *People* v. *Ransom*, 7 Wend. (N. Y.) 417, 424, it is said that any irregularity or misconduct of the jurors will not be a sufficient ground for setting aside a verdict, either in a criminal or a civil case, where the court are satisfied that the party complaining has not, and could not have, sustained any injury from it. In *Commonwealth* v. *Carrington*, 116 Mass. 37, the question arose whether, in a criminal case, not capital, the jury may be authorized by the court, without the consent of the defendant, to separate after agreeing upon, signing, and sealing up a paper in the form of a verdict, and afterwards return a verdict in open court, in accordance with the result so stated and sealed up. It was held that such a course is proper. The court say:

" 'The tendency of modern decisions has been to relax the strictness of the ancient practice which required jurors to be kept together from the time they were impaneled until they returned their verdict, or were finally discharged by the court. In civil cases the jury are never kept together at the intermissions of the sittings of the court pending the trial, and it is well settled that, after the case is finally committed to them, they may be allowed by the court to separate, if they first agree upon and seal up their verdict, and afterwards affirm it in open court; and that, if their verdict, when opened, does not cover all the issues on which they are to pass, the case may be recommitted to them, and a verdict subsequently rendered will be good. *Winslow* v. *Draper*, 8 Pick. (Mass.) 170; *Pritchard* v. *Hennessey*, 1 Gray (Mass.), 294; *Chapman* v. *Coffin*, 14 Gray (Mass.), 454. But if, upon returning into court, one of the jurors dissents from the verdict to which all had agreed out of court, it cannot be recorded. *Lawrence* v. *Stearns*, 11 Pick. (Mass.) 501. In capital cases, indeed, the uniform practice in this commonwealth has been to keep the jury together from the time the case is opened to them until their final discharge. But the practice is equally well settled, and in accordance with the decisions elsewhere, that, pending a trial for a misdemeanor, the jury may be permitted by the court, without the consent or knowledge of the defendant, to separate and go to their homes at night, without vitiating the verdict. *Rex* v. *Woolf*, 1 Chitty, 401; *King* v. *Kinnear*, 2 B. & Ald. 462; *McCreary* v. *Commonwealth*, 29 Pa. St. 323. If the jury, in the case of misdemeanor, are allowed, without the consent of the defendant, to separate after the case is finally committed to them by the court, and before the verdict is returned, the verdict cannot be recorded, unless it clearly appears that the verdict was not influenced by anything that took place during the separation. It was accordingly held that, where the jury were allowed by the judge to disperse upon stating to the officer they had agreed on and sealed up a verdict, and, upon coming into court, rendered an oral verdict, without any sealed verdict being produced or opened, or its contents made known to the defendant or his counsel, the verdict was invalid. *Commonwealth* v. *Durfee*, 100 Mass. 146; *Commonwealth* v. *Dorus*, 108 Mass. 488. But, when all possibility of improper influences is excluded by conclusive evidence that the jury arrived at and reduced to writing, before their separation, the same result which they afterwards announced in open court, the verdict may be received and recorded. *State* v. *Engle*, 13 Ohio, 490; *State* v. *Weber*, 22 Mo. 321; *Reins* v. *People*, 30 Ill. 256.' "

See, also, *Pounds* v. *United States*, 171 U. S. 35 (18 Sup. Ct. 729). In *Com.* v. *Slattery*, 147 Mass. 423 (18

N. E. 399), the respondent being accused of rape, and in *Com.* v. *Heden*, 162 Mass. 521 (39 N. E. 181), where manslaughter was the charge, the rule of *Com.* v. *Carrington* appears to have been followed.

In *State* v. *Webber*, 90 Me. 108 (57 Atl. 877), respondent being charged with a misdemeanor, the jury was directed by the court to seal the verdict when they had agreed; suitable blanks being furnished to the officer in attendance for that purpose. The jury agreed and separated. In the morning they came into court and stated that they had no sealed verdict other than that which appeared on the indictment, which was in a sealed wrapper with the following written at the bottom of the indictment: "Guilty as charged in the indictment. Samuel Strout, Foreman." Thereupon the jury rendered their verdict of guilty orally. In considering the exceptions by defendant, the court said:

"In the view of this question, which has uniformly prevailed in the courts of Massachusetts, the only purpose or effect of the written verdict, signed and sealed up by the jury, is to afford conclusive evidence that the oral verdict delivered in open court is substantially the same as the result recorded in the written form, and that the jury were not influenced in arriving at their oral verdict by anything that occurred after their separation. It is accordingly settled in that State that the delivery of the verdict by the foreman of the jury by word of mouth in the presence of the court is an indispensable safeguard in all criminal cases. *Commonwealth* v. *Tobin*, 125 Mass. 203 (28 Am. Rep. 220). But a different view has been adopted by our court. In the 'Anonymous' case reported in 63 Me. 590, the conclusion is reached after careful advisement that in any criminal case, where the offense is not punishable by imprisonment for life, the presiding judge may authorize the jury to seal up their verdict and separate during an adjournment of the court, and have it opened, read, and affirmed at the coming in of the court with the same effect as if pronounced orally; and for this purpose a verdict signed by the foreman in the form there prescribed or in any other substantially equivalent form is declared to be sufficient. In *State* v. *McCormick*, 84 Me.

566 (24 Atl. 938), this conclusion is reaffirmed, and the practice of requiring an oral verdict in addition to the sealed one declared to be a matter of form rather than of substance.    Either course is there said to be legal."

I assume that the Supreme Court of Maine classed offenses punishable by life imprisonment with capital offenses.    The Supreme Court of California, in *People* v. *Kelly*, 46 Cal. 355, without giving reasons and without citation of authority, held that the order of the court, authorizing the sheriff to receive from the jury a sealed verdict if they should agree during the night, and upon its receipt to allow the jury to separate until the session of the court on the following morning, would have been error if it had not been consented to by the defendant's counsel at the time it was made.    "Having," it is said, "deliberately consented to this irregular form of procedure, the defendant is in no position to complain."    In 1 Bishop's New Criminal Procedure (4th Ed.), § 1002, it is said:

"In a part of our States, perhaps in all, by agreement, by order of the court without, or by statutes, if in a misdemeanor case or even in some of the States one of felony not capital, the court has adjourned when the jury have determined on their verdict, they may reduce it to writing, seal it up, separate, and bring it into court on its opening."

A considerable list of authorities cited in the note sustains the various propositions stated in the text.

In my opinion both reason and authority require the conclusion that the whole matter is one of practice, which may be amended by courts or by the legislature without invading any of the guaranteed or essential rights of a person accused of crime; that the essential thing is a verdict of the jury based upon no extrajudicial considerations; that courts may pursue the practice thought to be best calculated to secure such a verdict, adopting, or declining to adopt, in the exercise of a sound discretion, one practice or another, with or without the consent of the accused.

The same reasoning, if not the same authority, sustains a refusal to classify crimes, by the punishment which may be inflicted or otherwise, for the purpose of determining whether the practice pursued in a particular case was or was not erroneous. The legislature has provided what the practice shall be in cases where murder is charged. It might have provided the same practice for all cases where the offense may be punished by imprisonment for life. It did not do so, and the fact that it did not is persuasive in reaching the conclusion stated.

In the case at bar no intimation is given that the jury did not render an impartial verdict, supported by the evidence and the law. No suspicion of undue influence is averred. The verdict agreed to before separation was the verdict assented to by each juror in open court. The fact that, without the consent of the respondent the jury was permitted to separate, after sealing the verdict, does not, of itself, constitute reversible error.

The conviction is affirmed, and the court is advised to proceed to judgment.

HOOKER, MOORE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, C. J., took no part in the decision.